# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
March 4, 2003 Session

## STATE OF TENNESSEE v. RICHARD COLE, III

**Direct Appeal from the Circuit Court for Crockett County**
**No. 3347      Clayburn Peeples, Judge**

_____

### No. W2002-02826-CCA-R3-CD  - Filed October 8, 2003
_____

Richard Cole, III appeals from the Crockett County Circuit Court's imposition of an effective 50-year sentence for his convictions of especially aggravated kidnapping and two counts of aggravated rape.  The individual sentence for each of the three Class A felonies was set at 25 years, and the aggravated rape sentences were imposed concurrently with each other and consecutively to the especially aggravated kidnapping sentence.  The defendant complains on appeal that the individual sentences are too lengthy and that there is no basis for consecutive sentencing.  Upon review, we modify the defendant's individual sentences to 21 years for the two aggravated rape convictions and 21 years for the especially aggravated kidnapping conviction.  We find partial consecutive sentencing appropriate and impose an effective sentence of 42 years.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed, as Modified.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

Jeff Mueller, Jackson, Tennessee, for the Appellant, Richard Cole, III.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and Garry G. Brown, District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The defendant and Jonathan Johnson abducted an employee of the United States Postal Service from the Bells Post Office.  They held the victim at gunpoint while driving around in her car.  Both perpetrators raped the victim twice.  Within a few hours, the defendant and Johnson were arrested and gave inculpatory statements.  The Crockett County Grand Jury

-1-

returned an eleven-count indictment against the defendant for his participation in the crimes. The defendant was likewise charged with federal crimes by federal authorities. The defendant was convicted of three offenses upon his guilty pleas in federal court and received an effective twenty-six year, seven-month sentence. In the Crockett County court, the defendant pleaded guilty to especially aggravated kidnapping and two counts of aggravated rape without an agreement as to sentencing. The remaining charges were dismissed.

At the defendant's sentencing hearing, the court heard proof about the circumstances of the crime from Katrina Chalmers, the postal inspector who acted as the lead investigator. Her investigation revealed that Jonathan Johnson had been the leader in the offense, although the defendant followed Johnson and participated in the crime as directed by Johnson. Chalmers testified that the defendant and Johnson approached the victim, who was working behind the counter at the post office. Johnson displayed a handgun and demanded that the victim get her car keys. Johnson, followed by the defendant, jumped over the counter and took the victim away in her car. Over a period of approximately four hours, the victim endured four sexual assaults as the defendant and Johnson took turns driving the vehicle and assaulting the victim. At one point, Johnson told the victim that if she identified them to the authorities, he would send someone to take care of her. Johnson claimed that there were not enough police in the world to protect her. After Johnson learned from his sister that the authorities were looking for the defendant and him, the two men made the victim drive to a wooded area, where Johnson attempted to wipe fingerprints from the car with the defendant's shirt, and they disposed of the gun. The two had the victim drop them off in a specified location, and she then returned to the post office.

Pamela Auble, a neuropsychologist, testified that she had examined and tested the defendant and had reviewed his medical records from a severe head injury he sustained in 1996. Doctor Auble testified that as a result of the defendant's prior head injury, he is mentally impaired with an IQ of 74 and has significant deficits in his ability to plan and organize his behavior, set goals, make decisions, and form intent. The defendant is susceptible to falling under the influence of others, and although Dr. Auble did not believe that he is prone to criminal conduct on his own, his suggestible nature leaves him at risk if he associates with the wrong people. Once the defendant becomes involved in a situation involving unlawful conduct, he does not have the ability to extricate himself. Doctor Auble opined that the defendant and society would be best served if the defendant were in a structured, supervised setting, such as a halfway house, where his actions and associates could be monitored. She projected that the defendant's malady would be a lifelong impairment. Moreover, Dr. Auble learned from the defendant's family that the defendant has not been able to hold a job or complete vocational training since receiving the head injury.

Two of the defendant's relatives testified that following the defendant's head injury, he has become easily influenced and prey for others who might take advantage of him.

One of the relatives echoed Dr. Auble's testimony that the defendant does not think about the consequences of his actions.

The presentence report, which was received into evidence at the hearing, reflects that the defendant was on misdemeanor probation for theft and contributing to the delinquency of a minor at the time of these offenses. The defendant had a juvenile adjudication of unruliness for unspecified conduct, as well.

After hearing the evidence, the lower court imposed a maximum, 25-year sentence for each of the offenses. It imposed the rape sentences to run concurrently to each other but consecutively to the kidnapping sentence, for an effective 50-year sentence.

The defendant then filed this appeal, in which he attacks the length of the individual sentences and the consecutive sentencing order.

We begin with a review of the relevant law. In making a felony sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) the evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. *See* Tenn. Code Ann. ' 40-35-210(a), (b) (Supp. 2002); *id*. § 40-35-103(5) (1997); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. *See* Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). Likewise, the trial court has an affirmative duty to state on the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. § 40-35-209(c), 40-35-210(f) (Supp. 2002); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998); *State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999).

In this case, the court made incomplete factual findings regarding the applicability and non-applicability of enhancement and mitigating factors. Moreover, its finding that the defendant is a dangerous offender is not supported by the record. Thus, we must conduct a *de novo* review unaccompanied by the presumption of correctness.

**Length of Sentences**

Considering first the enhancement factors, the record supports that the following factors exist.

"The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range[.]" Tenn. Code Ann. § 40-35-114(2) (Supp. 2002). The defendant has prior convictions of misdemeanor theft and contributing to the delinquency of a minor.

The lower court found that "[t]he defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense[.]" Tenn. Code Ann. § 40-35-114(6) (Supp. 2002). In order for this factor to apply, the evidence which potentially constitutes exceptional cruelty must demonstrate "a culpability distinct from and appreciably greater than" that which is inherent in the charged offense. *State v. Poole*, 945 S.W.2d 93, 98 (Tenn. 1997); *see also Arnett*, 49 S.W.3d at 258 (evidence "must 'denote[] the infliction of pain or suffering for its own sake or from the gratification derived therefrom, and not merely pain or suffering inflicted as the means of accomplishing the crime charged'") (quoting *State v. Kelly Haynes*, No. W1999-01485-CCA-R3- CD, slip op. at 6 (Tenn. Crim. App., Jackson, Mar. 14, 2000)). In this case, the kidnapping sentence is subject to enhancement via this factor. The cruelty of the four rapes inflicted on the victim by the defendant and his accomplice demonstrate distinct and greater culpability than the cruelty inherent in kidnapping alone. However, we do not believe that the converse is true B the evidence does not demonstrate that the rapes were more cruel because of the companion kidnapping offense. To be sure, it appears that the kidnapping was a means of accomplishing the rapes. *See Arnett*, 49 S.W.3d at 258. Thus, this factor applies only to the sentence for the kidnapping offense.

We are aware that, in *State v. Walter Johnson*, No. 02C01-9801-CR-00007, slip op. at 13-15 (Tenn. Crim. App., Jackson, Nov. 10, 1998), this court held that the exceptional cruelty enhancement factor did not apply to a sentence for especially aggravated kidnapping, despite the victim being abducted at knife point, threatened that she would be killed, driven to a remote location, and forced to perform sexual acts. We respectfully believe, however, that the *Walter Johnson* panel should have applied the exceptional cruelty factor to the especially aggravated kidnapping sentence in that case.

"The personal injuries inflicted upon . . . the victim w[ere] particularly great[.]" *Id. §* 40-35-114(7) (Supp. 2002). According to the victim impact statement contained in the presentence report, the victim was so emotionally traumatized by the crimes that she now attends counseling at least once a week, had to sell her vehicle because being in it reminded her of the crimes, was absent from work for six months as a result of the crimes, has not been able to return to the town of Bells, and lives in fear that she was exposed to the HIV virus. Clearly, the victim suffered particularly great personal injuries as contemplated by enhancement factor (7). *See*

*State v. Arnett*, 49 S.W.3d 250, 260 (Tenn. 2001) ("[A]pplication of this factor is appropriate where there is specific and objective evidence demonstrating how the victim's mental injury is more serious or more severe than that which normally results from this offense."); *State v. Williams*, 920 S.W.2d 247, 259-60 (Tenn. Crim. App. 1995) (victim suffered depression and low self-esteem, missed school, and participated in counseling as a result of sexual assault).

Next, we consider the mitigating factors. The record demonstrates that "[t]he defendant was suffering from a mental . . . condition that significantly reduced the defendant's culpability for the offense . . . ." Tenn. Code Ann. § 40-35-113(8) (1997). According to Dr. Auble, the defendant has an IQ bordering on mental retardation and because of his mental limitations is easily influenced to do things that he would not do if left to his own devices.

The record likewise demonstrates that "[t]he defendant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses," and "[t]he defendant assisted the authorities in locating or recovering any property or person involved in the crime." *Id.* § 40-35-113(9), (10) (1997). After he was apprehended, the defendant gave a full confession in which he inculpated Jonathan Johnson. The defendant likewise led the authorities to the location at which he and Johnson disposed of the weapon used in the crimes.

The record supports a finding that "[t]he defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct[.]" *Id.* § 40-35-113(11) (1997). The defense offered evidence that the defendant's conduct was out of character and resulted from the defendant's suggestible nature and his unfortunate association with Jonathan Johnson. This evidence likewise supports a finding that "[t]he defendant acted under . . . the domination of another person, even though . . . the domination of another person is not sufficient to constitute a defense to the crime[.]" *Id.* § 40-35-113(12) (1997).

We are also compelled to find mitigation for the kidnapping offense in the defendant's act of voluntarily releasing the victim alive. *See id.* § 39-13-305(b)(2) (1997). Although the defendant has not commended this factor to us, the Code mandates that the sentencing court "shall"consider it as mitigation evidence if factually established. *Id.* There is no question that the record demonstrates the existence of this factor.

In determining the appropriate length of sentences for the defendant, we begin with the mid-point of the range, in this case 20 years for a 15 to 25-year range. *See id.* § 40-35-210(c) (Supp. 2002) (sentencing determination begins at midpoint for Class A felonies); 40-35-112(a)(1) (1997) (15 to 25-year range for Class A felonies committed by Range I offenders). From that point, we enhance the sentence as appropriate for the enhancement factors and then reduce it as appropriate for the mitigating factors. *See id.* § 40-35-210(e) (Supp. 2002).

Returning to the case at bar, we must consider the weight to be given the enhancement factors. The defendant's prior criminal history consists of misdemeanor offenses; however, they were committed only a few weeks before the crimes for which he is presently before the court. We assign moderate weight to this factor. With respect to the particularly great personal injuries enhancement factor, we assess heavy weight due to the significant and protracted nature of the victim's psychological injuries. For the kidnapping offense, we weigh the exceptional cruelty enhancement factor moderately.

We next consider the appropriate weight for the five mitigating factors applicable to the rapes and the six mitigating factors applicable to the kidnapping. Factors (8), (11), and (12) are all generally related to the defendant's mental limitation and its effect on his culpability for the crime. Factors (9) and (10) are both related to the defendant's cooperation with authorities once he was apprehended. Given the interrelatedness of these two groupings of factors, all of which apply to the three convictions, we assign them slight individual weight and moderate aggregate weight. With respect to the sixth factor for voluntary safe release of the victim, which is applicable to the kidnapping sentence, we assign moderate weight. "This provision reflects the concern for the safety of the victim." *Id.* § 39-13-305(b)(2), Sent'g Comm'n Comments (1997). Here, the victim was released alive with her vehicle and was able to return to safety.

Based upon our assessment and weighing of the enhancement and mitigating factors, we sentence the defendant to 21-year terms for his two aggravated rape convictions and a 21-year term for his especially aggravated kidnapping conviction.

## Consecutive Sentencing

We now turn to the issue of consecutive sentencing. Consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the following criteria exist:

(1)     The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2)     The defendant is an offender whose record of criminal activity is extensive;

(3)     The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (1997). In *State v. Wilkerson*, 905 S.W.2d 933, 937-38 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing under the dangerous offender category -- the court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct.

The lower court premised consecutive sentencing upon findings that the defendant is a dangerous offender and that the defendant was on probation at the time he committed the offenses. *See* Tenn. Code Ann. § 40-35-115(b)(4), (6) (1997).

We consider first the dangerous offender categorization. The lower court conceded, "The defendant does not appear from the proof to be a dangerous offender in the classic sense of the term." Nevertheless, the court found that the defendant's "naivete . . . causes behavior which indicates no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" We are unpersuaded by the record which is before us that the defendant should be subject to consecutive sentencing as a dangerous offender. Although the defendant participated in serious criminal activity, during which he and the other perpetrator alternately employed a handgun, the evidence before the court is that the defendant was a follower who did little to actively advance the criminal enterprise. There is evidence that the defendant fell asleep during the kidnapping and that the defendant provided so little assistance to Jonathan Johnson that Johnson remarked that he would need to find someone else to help him. We are unconvinced that the state carried its burden of demonstrating that the defendant was a

"dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." *See id.* § 40-35-115(b)(4) (1997).

However, the record does demonstrate that the defendant committed the offenses while on probation for two misdemeanor offenses. This is an alternate basis upon which consecutive sentencing may be premised. *See id.* § 40-35-115(b)(6) (1997). The offenses in this case are among the most serious of the violent felonies proscribed by the Criminal Code. The victim was forced at gunpoint out of her place of employment and into her car, where she had to endure multiple sexual assaults from the two perpetrators. Among the purposes of the Sentencing Act is to punish each defendant "by the imposition of a sentence justly deserved in relation to the seriousness of the offense." *See id.* § 40-35-102(1) (1997). Likewise, the sentence must be "no greater than that deserved for the offense committed." *See id.* § 40-35-103(2) (1997). Given the severity of the offenses involved here, partial consecutive sentencing is an appropriate and justly deserved sanction. We hereby impose the aggravated rape sentences concurrently with each other and consecutively with the especially aggravated kidnapping sentences. The defendant will serve an effective 42-year sentence for his convictions. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (in passing on question of consecutive sentencing under Code section 40-35-115(b), court must consider general sentencing principles of sections 40-35-102(1) and -103(2)); *State v. Lane*, 3 S.W.3d 456, 460 (Tenn. 1999).

In summary, we modify the defendant's sentences to 21 years for the two aggravated rape convictions and 21 years for the especially aggravated kidnapping conviction. The aggravated rape sentences shall be served concurrently to each other and consecutively to the especially aggravated kidnapping sentence, for an effective sentence of 42 years. The defendant's judgments are affirmed as modified.

_____
JAMES CURWOOD WITT, JR., JUDGE