**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**DECEMBER 1998 SESSION**

FILED

April 7, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9803-CR-00092 |
| | ) | |
| vs. | ) | Sullivan County |
| | ) | |
| **DION ANDRES RUSSELL,** | ) | Hon. R. Jerry Beck, Judge |
| | ) | |
| Appellant. | ) | (Resisting Arrest, Evading Arrest, |
| | ) | Inciting to Riot) |

FOR THE APPELLANT:

**BURKETT C. McINTURFF (at trial)**
Attorney at Law
132 Broad St.
Kingsport, TN

**ROBERT C. EDWARDS (on appeal)**
Attorney at Law
382 Emory Rd.
Blaine, TN  37709

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TODD R. KELLEY**
Assistant Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN  37243-0493

**H. GREELEY WELLS, JR.**
District Attorney General

**GREGORY NEWMAN**
Asst. District Attorney General
P.O. Box 526
Blountville, TN  37617-0526

OPINION FILED:_____

**CONVICTION AFFIRMED; SENTENCE MODIFIED**

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendant, Dion Andres Russell, appeals from his convictions of resisting arrest,[1] evading arrest[2] and inciting to riot.[3] He received his convictions at the conclusion of a jury trial in the Sullivan County Criminal Court. The trial court imposed consecutive sentences of eleven months, 29 days confinement in the county jail for inciting to riot, six months probation conditioned upon Community Corrections supervision for resisting arrest, and eleven months, 29 days probation conditioned upon Community Corrections supervision for evading arrest. In this direct appeal, the defendant challenges the trial court's denial of his attorney's motion to withdraw or for a continuance, the sufficiency of the convicting evidence, and the sentences imposed. After a review of the record, the briefs and the oral arguments of the parties, we affirm the judgment of the trial court, although we modify the terms of the sentence for inciting to riot.

The defendant's convictions stem from a disturbance in the Riverview housing project in Kingsport. At trial, the state's evidence showed that at 12:20 a.m. on May 5, 1996, Officer James Clark of the Kingsport Police Department was sitting in his patrol car when two women ran up and notified him of a fight at the Riverview complex in which one of the participants was armed with a gun. When Officer Clark arrived at the scene, he found two men shoving, cursing and yelling at each other. He later discovered these individuals to be Courtney Webster and Jeffery Gaines. Neither Webster nor Gaines had a firearm in plain view. A group of eight to twelve people were gathered around Webster and Gaines.

---

[1]Tenn. Code Ann. § 39-16-602 (1997).

[2]Tenn. Code Ann. § 39-16-603 (1997).

[3]Tenn. Code Ann. § 39-17-304 (1997).

As Officer Clark approached the men, he saw the defendant, whom he knew, approaching. The defendant placed himself between Officer Clark and the men who were fighting. Officer Clark told the defendant to stay out of the way and put his hands on the defendant to move him away. The defendant responded, "Don't touch me, that's my brother." According to Officer Clark, the defendant did not identify which of the two fighting men was his brother. Officer Clark told the defendant to move three times and pushed him back, and each time the defendant came forward again.

Gaines and Webster were still arguing, so Officer Clark attempted to arrest the defendant so that he would be able to deal with the fight without interference. As Officer Clark was about to handcuff the defendant, one of the women who had approached the officer about the fight indicated that Gaines was the man with the gun. Officer Clark let the defendant go and turned his attention to subduing Gaines.

Officer Clark arrested Gaines and found a semi-automatic weapon and lock-blade knife in his possession. By the time this arrest was completed, there were as many as 75 people outside their homes. After Gaines was arrested, Webster went inside a residence then came back outside. Webster began cursing and lunging at Officer Clark even though Clark instructed him to go home. Assisted by other officers, Officer Clark placed Webster, who weighed 300 to 350 pounds, under arrest for disorderly conduct. The arrest was preceded by a struggle during which chemical spray was used to subdue Webster. While the officers were struggling to control Webster, the defendant repeatedly implored the crowd, "Don't let them take my brother," and "Kick the cops' a--." He insisted his brother had done nothing to warrant his arrest. He shoved Officer Clark, who had to push him away. Officer Burke Murray had to stand between the defendant and Officer Clark and

3

admonish the defendant to stay back. The defendant grabbed a member of the crowd and tried to get him to come forward to help him. The crowd became agitated and began lunging at the officers and yelling that the officers' actions were motivated by racism and constituted police brutality.

Officer Clark told another officer to arrest the defendant for interfering with his duties and agitating the crowd, and the defendant immediately ran away.

The defendant testified in his own defense and challenged the state's version of events. He claimed that he had been roughly handled by Officer Clark, that he did not incite the crowd as alleged by the state but was just trying to explain the situation to Officer Clark, and that he and his brother complied with the officers' directions but were nevertheless arrested. He denied that Officer Clark repeatedly told him to back off and claimed that Officer Clark and another officer approached his brother and him and harassed them after they had retreated to the porch of a relative's home.

On this evidence, the jury found the defendant guilty of resisting arrest, evading arrest and inciting to riot.

I

In his first issue, the defendant claims that the trial court erred in denying his attorney's motion to withdraw, or in the alternative, motion for continuance. Apparently, the defendant and trial counsel, who are well-known to each other, had a disagreement culminating in the defendant firing counsel three to four months prior to the day of trial. The defendant had not paid his attorney's fee. Counsel wrote two letters to the defendant and mailed them to him at relatives' homes advising that he did not represent the defendant and the defendant should

4

either rehire and pay counsel or make other arrangements. The defendant never contacted counsel or retained other counsel, and counsel made no preparation for trial. Counsel filed a motion to withdraw twelve days before trial, although no hearing was held until the day of trial.

On the morning of trial, the defendant himself essentially made a motion for continuance, representing that he could be ready to proceed pro se if he could have two weeks to prepare for trial.

The trial court took a dim view of further delay in the case and noted that the case had been reset numerous times since the defendant's appeal to criminal court from the convictions received in general sessions court. The court noted that counsel had done what he could to communicate with the defendant, and counsel's unpreparedness for trial was of the defendant's own making in failing to communicate with counsel.

**Withdrawal of Counsel**

The decision whether to allow counsel to withdraw in a pending criminal matter is vested in the sound discretion of the trial court, and the decision will not be reversed on appeal unless an abuse of discretion is shown. State v. Branam, 855 S.W.2d 563, 566 (Tenn. 1993); State v. Melvin, 913 S.W.2d 195, 201 (Tenn. Crim. App. 1995); cf. Tenn. Code Ann. § 40-14-205 (1997) (court "may" allow appointed counsel to withdraw upon showing of good cause).

The defendant has not demonstrated that the trial court abused its discretion in denying counsel's motion to withdraw. Counsel had represented the defendant in his trial in general sessions court, so he was familiar with the case and witnesses despite his protestations that he was not ready to proceed. The matter

5

had been reset numerous times. Had the motion been allowed, further delay would have been necessary in order for the defendant to prepare his case pro se or retain other counsel. Well over a year had passed between the defendant's initial conviction in general sessions court and the date of the trial in criminal court. Cf. Jones v. State, 548 S.W.2d 329 (Tenn. Crim. App. 1976) (no abuse of discretion shown in trial court's denial of motion for continuance for purpose of retaining other counsel where defendant did not voice dissatisfaction with counsel until day of trial).

Further, the local rules of practice of the trial court provide that motions "shall be filed within the time required by law or without unnecessary delay after the cause or reason therefor arises so as not to cause continuance of any trial date or hearing date." Local Rules of Practice, Criminal Court, Sullivan County, at Blountville, Tennessee, § 10.01. In the present case, counsel's motion was filed only twelve days before trial, although his services had been terminated by the defendant three to four months earlier. On the day of trial, the defendant had not retained other counsel and was not prepared to proceed pro se. Under the local rules, the motion to withdraw should have been brought with "unnecessary delay." Instead, it was filed so close to trial that a continuance would almost certainly be necessary in order for new counsel to make adequate preparations for trial. Further, the motion was not even heard until the day the trial was scheduled to begin. The tardiness of the motion, coupled with the defendant's own inattention to his case, further support the trial court's exercise of its discretion in not granting the motion to withdraw.

**Continuance**

The decision whether to grant a motion for a continuance is a matter of discretion for the trial court, the denial of which will not be overturned on appeal absent a clear showing the trial court abused its discretion to the prejudice of the

6

defendant. State v. Melson, 638 S.W.2d 342, 359 (Tenn. 1982); Baxter v. State, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973). In order to establish an abuse of discretion, the complaining party must make a clear showing of prejudice as a result of the continuance being denied. State v. Teel, 793 S.W.2d 236, 245 (Tenn. 1990).

Applied to the facts of the case at bar, the defendant has made no showing of prejudice. While he claims that Courtney Webster, a material witness, was unavailable, the record does not reveal what Webster's testimony would have been and how it would have helped the defendant. If the defendant wished to demonstrate prejudice, he could have done so by submitting an affidavit of the material witness in support of the motion for continuance or presenting the witness's testimony at the hearing on the motion for new trial. See State v. Dykes, 803 S.W.2d 250, 256-57 (Tenn. 1990) (affidavit of unavailable witness in support of motion for continuance); State v. Meeks, 876 S.W.2d 121, 130 (Tenn. Crim. App. 1993) (no prejudice from trial court's denial of motion to continue where defendant failed to present proof at motion for new trial hearing). Neither an affidavit of the unavailable witness nor the transcript of the hearing on the motion for new trial appears in the record. Thus, the defendant has not demonstrated to this court that he suffered prejudice because the trial court did not continue the case.

Again, the local rules of practice provide further support for the trial court's ruling. In addition to the provision quoted above regarding timely filing of motions, the local rules contemplate the grant of a continuance exclusively upon a showing of "good cause . . . brought to the attention of the Court as soon as practicable before the date of trial . . . ." Local Rules of Practice, Criminal Court, Sullivan County, at Blountville, Tennessee, § 9.03. Here, the motion was not promptly presented to the trial court. The defendant appeared for trial on the appointed date without his material witness, who also happened to be his brother.

7

The defendant had already been tried in general sessions court on these charges; therefore, he should have been aware whether his brother's presence as a witness was necessary on the day of his criminal court trial. As noted above, the necessity of his brother's testimony is not apparent on the record before us. The defendant articulated no "good cause" for a continuance, and the trial court did not err in denying his request.

## II

The defendant next challenges the sufficiency of the convicting evidence on each of his three convictions. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate

8

view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

## Resisting Arrest

The crime of "resisting stop, frisk, halt, arrest or search" occurs where a person

> intentionally prevent[s] or obstruct[s] anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at such officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

Tenn. Code Ann. § 39-16-602(a) (1997).

The defendant challenges his resisting arrest conviction in two respects. First, he claims that the charging instrument, in this case an affidavit of complaint, does not adequately describe the offense and results in a void conviction. Second, he claims that there is no evidence that he used force during the commission of the alleged offense.

Although it is not entirely clear from the defendant's brief, his argument seems to include the theory that he did not use force to prevent or obstruct his own arrest. However, the statutory definition of the crime is much broader and includes a defendant's actions which prevent or obstruct an officer from stopping, frisking, halting, arresting or searching any person.

Considering first the sufficiency of the charging instrument, it alleges that during the process of Officer Clark's efforts to arrest Courtney Webster, the defendant "became very angry and physically got between officer [sic] to prevent from [sic] arresting Webster." The charging instrument further alleges that during Officer Clark's efforts to arrest Webster, several officers attempted to push the

9

crowd back "from the Webster arrest," but the defendant "lunged toward arresting officer of Webster and slapped him on the back." Clearly, the allegations of the charging instrument assert that the defendant used force in interfering with Officer Clark's arrest of Webster.

The evidence sufficiently supports the defendant's conviction. In the light most favorable to the state, the defendant forcibly interfered with Officer Clark's efforts to arrest Webster by pushing Clark on the back.

**Evading Arrest**

Evading arrest occurs where a person "intentionally flee[s] by any means of locomotion from anyone the person knows to be a law enforcement officer if the person . . . [k]nows the officer is attempting to arrest the person[.]" Tenn. Code Ann. § 39-16-602(a)(1)(A) (1997).

The defendant claims there was "no testimony that [the defendant] heard the officer express his interest [in arresting the defendant] or was in fact even close enough to have heard the expression of interest." However, Officer Clark testified that the defendant "was standing right in the middle" with the crowd and the defendant and the rest of the crowd "were right up on top of us." Officer Clark told another officer to arrest the defendant. The defendant immediately fled on foot. In the light most favorable to the state, the defendant was close enough to have heard Officer Clark's instruction, and furthermore, his immediate flight indicates that he did hear it. The evidence sufficiently supports this conviction.

**Inciting to Riot**

Inciting to riot occurs where an individual "incites or urges three (3) or more persons to create or engage in a riot." Tenn. Code Ann. § 39-17-304(a)

10

(1997). A riot is defined as "a disturbance in a public place involving an assemblage of three (3) or more persons which, by tumultuous and violent conduct, creates grave danger of substantial damage to property or serious bodily injury to persons or substantially obstructs law enforcement or other governmental function[.]" Tenn. Code Ann. § 39-17-301(3) (1997).

Counsel for the defendant conceded at oral argument that if the defendant made the statements the state's witnesses claimed he made, the crime was established. It is the defendant's contention, however, that he did not make statements such as "Don't let them take my brother" and "Kick the cops' a--."

The jury heard both the state's and the defendant's versions of events. It chose to accredit the state's evidence and discredit the defendant's evidence. The law requires the appellate court to defer to the jury on all questions of credibility of witnesses and weight and value of the evidence. The evidence in this case, viewed most favorably to the state, establishes that the defendant committed the crime of inciting to riot. Thus, we must uphold the jury's finding of guilt.

### III

Finally, the defendant challenges the sentences imposed. First, he alleges that the trial court engaged in judicial vindictiveness by sentencing him to a harsher sentence in this _de novo_ jury trial in criminal court than he had initially received when convicted at a bench trial in general sessions court. Second, he complains that the trial court inappropriately imposed consecutive sentencing and failed to make specific findings of enhancement and mitigating factors on the record.

11

**Judicial Vindictiveness**

In support of this argument that the trial court vindictively sentenced him based upon his exercise of his right to a trial <u>de novo</u> in criminal court following his conviction in general sessions court, the defendant relies extensively on the principles of <u>North Carolina v. Pearce</u>, 395 U.S. 711, 89 S. Ct. 2072 (1972), <u>overruled in part by</u> <u>Alabama v. Smith</u>, 490 U..S. 794, 109 S. Ct. 2201 (1989).[4] In <u>Pearce</u>, the Supreme Court held that a presumption of judicial vindictiveness arises from the imposition of a harsher sentence on retrial following a successful appeal, absent an affirmative showing of the basis for the more severe sentence. <u>Pearce</u>, 395 U.S. at 722-26, 89 S. Ct. at 2079-81.

The situation in <u>Pearce</u>, however, is different from the case at bar because the latter presents an exercise of a right to a trial <u>de novo</u> before a different judge, while the former presents a new trial won on appeal due to error in the first proceeding before the same court chargeable with the reversible error. In <u>State v. Curtis A. Hall</u>, No. 678 (Tenn. Crim. App., Knoxville, Aug. 26, 1985), a defendant in the same procedural posture made an identical argument as made in the case at bar, and this court flatly rejected it. Speaking for the court, Judge Daughtrey wrote

> [T]here is . . . no constitutional prohibition against imposing a greater punishment upon conviction in a trial de novo. A trial de novo implies that the case is to be treated as if it had never been heard before. Thus the provisions of <u>North Carolina v. Pearce</u>, 395 U.S. 711 (1969), have no applicability to a situation such as the one in this case. <u>See</u> <u>Colten v. Kentucky</u>, 407 U.S. 104, 117-18 (1972).

<u>Curtis A. Hall</u>, slip op. Simply put, the holding of this court in <u>Curtis A. Hall</u> precludes the result the defendant desires.

---

[4]The state has wholly ignored this argument in its brief, despite the fact that the defendant devoted 7 pages to it in his brief. The briefs of the parties should be of great assistance to this court in determining the issues. Unfortunately, the state has chosen to be of no assistance to the court on this important issue of constitutional significance.

## Sentencing Determination

The defendant also claims that the trial court imposed a sentence that is too lengthy.

In determining whether the trial court has properly sentenced an individual, this court engages in a de novo review of the record with a presumption that the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1997). In conducting our de novo review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. § 40-35-210(b) (Supp. 1998); Tenn. Code Ann. § 40-35-103(5) (1997); State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). On appeal, the appellant has the burden of showing that the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997); Ashby, 823 S.W.2d at 169.

In felony sentencing, the trial court has an affirmative duty to state in the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. § 40-35-209(c) (1997); Tenn. Code Ann. § 40-35-210(f) (Supp. 1998); State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). In contrast, the misdemeanor sentencing statute only requires that the trial court consider the enhancement and mitigating factors when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. §§ 40-35-302(d) (1997); Troutman, 979 S.W.2d at 274.

The defendant is correct that the trial court did not make explicit findings of enhancement and mitigating factors; however, it was not required to do so in this misdemeanor case. Troutman, 979 S.W.2d at 274. The lack of findings is no basis for holding the trial court in error.

However, the record reflects the trial court made a different error with respect to the percentage of service "in actual confinement" for the inciting to riot sentence. See Tenn. Code Ann. § 40-35-302(d) (1997). According to the transcript of the sentencing hearing, the trial court intended that the defendant serve the entire 100 percent of the inciting to riot sentence in the county facility, ordering that "he will be required to serve that eleven months and twenty-nine days."[5] Despite this pronouncement on the record, the trial court did not specify any percentage of service in its written judgment.

The misdemeanor sentencing statute provides that the percentage of the sentence to be served in confinement before the defendant is eligible for rehabilitative programs shall not exceed 75 percent. Tenn. Code Ann. § 40-35-302(d) (1997). Further, the statute provides, "If no percentage is expressed in the judgment, the percentage shall be considered zero percent (0%)." Tenn. Code Ann. § 40-35-302(d) (1997). When this court has been faced with a transcript of the sentencing hearing clearly indicating the trial court's intention that the defendant's percentage is not zero percent, however, we have deferred to the trial court's express pronouncement as reflected in the transcript. See State v. Rickey Hailey, No. 02C01-9705-CR-00198, slip op. at 6 (Tenn. Crim. App., Jackson, May 14, 1998); State v. Roscoe C. Smith, No. 01C01-9502-CR-00031, slip op. at 3 (Tenn. Crim. App., Nashville, Oct. 12, 1995).

_____

[5]The court found the other two crimes properly punished under a highly structured community corrections regime without actual confinement.

14

In the present case, the trial court's clear intent as reflected in the transcript of the sentencing hearing was that the defendant actually serve 100 percent of his sentence for inciting to riot, without any consideration for work release, furlough, trusty status and related rehabilitative programs. However, under the statue, 75 percent is the maximum percentage of service that may be required before the defendant is eligible for rehabilitation programs. Thus, we modify the percentage of service to 75 percent. In actuality, the modification has no effect other than to serve as a clarification of the judgment because the record reflects that the defendant received more pretrial jail credit than he would have been required to serve under 100 percent service of the trial court's eleven month, 29 day incarcerative sentence for inciting to riot.

Finally, the defendant alleges he should not have been subject to a consecutive sentence. In general, consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the following criteria exist:

(1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of

15

defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)     The defendant is sentenced for an offense committed while on probation; or

(7)     The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (1990).  In State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing -- the court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct.  At this time, it is unsettled whether Wilkerson applies to all seven of the statutory categories for consecutive sentencing or only the "dangerous offender" category.  See State v. David Keith Lane, No. 03C01-9607-CC-00259, slip op. at 11 (Tenn. Crim. App., Knoxville, June 18, 1997), perm. app. granted (Tenn. 1998).

In imposing consecutive sentencing, the trial court focused on the defendant's extensive criminal record, which the court characterized as "terrible." The court also commented on the dangerous situation the defendant created in committing these offenses.  The defendant's record is indeed terrible.  It began with shoplifting at age twelve and continued with six additional juvenile offenses.  As a 26-year-old adult, he had obtained an additional twenty offenses prior to coming before the trial court for sentencing in this case.  It is particularly noteworthy that he had two previous convictions for evading arrest, an assault conviction, an aggravated assault conviction as an adult and another as a juvenile, and five drug-related convictions.  There can be no serious dispute that "[t]he defendant is an offender whose record of criminal activity is extensive."  Tenn. Code Ann. § 40-35-115(b)(2) (1997).  Moreover, as noted by the trial court, these offenses are extremely serious.  The defendant's actions hindered law enforcement officers who

16

were trying to diffuse an armed confrontation in a residential area. Furthermore, the defendant attempted to incite the crowd to cause physical harm to law enforcement officers who were doing their best to perform their duties. The defendant's adamant insistence at trial that he did nothing wrong indicates his lack of repentance for endangering the lives of law enforcement officers, the public, and even his own half brother, which when coupled with the defendant's previous criminal history illustrates the need to protect the public from further criminal conduct.

Thus, finding no error requiring reversal, we affirm the judgment of the trial court as modified to reflect 75 percent service of the inciting to riot sentence.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE

_____
JERRY L. SMITH, JUDGE