IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 7, 2026

## STATE OF TENNESSEE v. MONTRELL REID

**Appeal from the Criminal Court for Shelby County**
**No. C2406145      Paula L. Skahan, Judge**

_____

### No. W2025-00780-CCA-R3-CD

_____

Defendant, Montrell Reid, appeals from his guilty-pleaded convictions for harassment and stalking, both Class A misdemeanors. Under the plea agreement, Defendant agreed to serve eleven months and twenty-nine days for each count, with the sentences to be served consecutively and the manner of service to be determined by the trial court. At sentencing, the trial court denied Defendant's request for probation and ordered that he serve his sentence in confinement. On appeal, Defendant contends that the trial court erred in denying his request for probation. Following our review, we affirm the trial court's judgments as to the denial of probation, but we remand for a determination of the percentage of service pursuant to Tennessee Code Annotated section 40-35-302(d).

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed; Case Remanded**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Jerri Green, District Public Defender, and Barry W. Kuhn (on appeal) and Kathryn A. McLain (at plea hearing), Assistant District Public Defenders, for the appellant, Montrell Reid.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Lauren Hutton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

In June 2024, Latasha Bell ("the victim") notified Memphis Police that she was being "relentlessly called and messaged" by Defendant. The calls and messages began the previous year and included "sexual references, moan[s], call[ing] the victim's name, explicit photographs of [Defendant] to include his penis, and threat[s] to kill the victim on numerous occasions." During these calls, Defendant accurately relayed the victim's home address, place of employment, and the names of her family members. On the morning the victim spoke to police, Defendant sent the following message: "Keep on and I'm going to kill you."

Two days later the victim sat for a recorded interview with police in which she identified Defendant as her harasser from a six-person photographic array. Defendant was arrested thereafter and released on his own recognizance. His bond conditions required him to continue taking his medication, report to Shelby County Behavioral Health Services ("SCBHS") for weekly supervision, and to have no contact with the victim. The record reflects that he took his medication as prescribed, checked in regularly with SCBHS, and kept his scheduled mental health appointments. However, the victim later testified during the sentencing hearing that Defendant continued to harass and threaten her after he was released from jail. In November 2024, the State charged Defendant via criminal information with one count of harassment and one count of stalking, both Class A misdemeanors.

In April 2025, Defendant waived presentment to the Shelby County Grand Jury and pleaded guilty as charged pursuant to a plea agreement. Under the negotiated plea, Defendant agreed to serve eleven months and twenty-nine days for each count, with the sentences to be served consecutively and the manner of service to be determined by the trial court. After accepting Defendant's guilty pleas, the trial court immediately sentenced Defendant to two consecutive terms of eleven months and twenty-nine days. The court then heard testimony and arguments as to the manner of service.

Defendant submitted a sentencing memorandum in which he requested probation so that he could receive appropriate mental health treatment. He argued that probation was warranted because he did not have a long history of criminal conduct and he had been fully compliant with his bond conditions in this case. As to his criminal history, Defendant stated that he had no felony convictions and only four prior misdemeanor convictions.[1] He

---

[1] We note that the sentencing memorandum lists four prior misdemeanor convictions; however, the presentence report reflects only three prior misdemeanor convictions.

stated that he had never served a substantial amount of time in confinement, had only been placed on probation once previously in 2023, and that he never violated that probation. Defendant further argued that a probationary sentence would not depreciate the seriousness of his offenses because "two years of supervision . . . [was] the longest sentence that [Defendant] ha[d] been responsible for." He pointed out that his previous probationary sentence did not include any conditions to facilitate his rehabilitation; therefore, while less restrictive measures had been applied, they had only been applied once and without any conditions related to his mental health. He further claimed that the less restrictive measures previously imposed had been "largely successful." Defendant then argued that three mitigating factors should apply in favor of a probationary sentence: (1) his criminal conduct did not result in serious bodily injury; (2) his mental status tended to justify his behavior "in that some of his behavior was a product of his mental health"; and (3) Defendant's mental health status "significantly reduced his culpability." *See* Tenn. Code Ann. § 40-35-113(1), (3), (8).

Defendant's mother, Mary Woodward, testified that Defendant began exhibiting mental health symptoms at age sixteen. His symptoms grew so severe that he dropped out of high school and was later diagnosed with chronic paranoid schizophrenia. Since his diagnosis, Defendant has been considered disabled. For years, he participated in monthly therapy sessions with a psychiatrist, and according to Ms. Woodward, those sessions helped Defendant with his behavior. When Ms. Woodward retired in 2021, Defendant lost his health insurance and was forced to discontinue his therapy sessions. Since Ms. Woodward's retirement, Defendant had not received any therapeutic treatment aside from taking his prescribed medications.

Defendant apologized to the victim for his behavior and testified that he wished to take "full accountability" for his actions. He testified that he had been compliant with his bond conditions, including taking his medication as prescribed, and that he had never served any time in confinement because of a conviction. He admitted that he was on probation for a separate harassment charge when he was arrested on the charges in this case. He also admitted that he had been arrested on similar charges on at least three other occasions, although he disputed the bases for those charges and pointed out that they were all dismissed. Although he testified that he had always taken his medication regularly and that he did not drink alcohol, the presentence investigation report reflected that he told probation officers that he consumed alcohol and used marijuana regularly. When the trial court questioned him about his contradicting statements, Defendant was adamant that he never made such statements during the presentence investigation. When asked if it was true that he had committed these same actions many times, Defendant replied "uh-huh." In response to questioning from the trial court, Defendant stated: "Well it's been over a year. Now I haven't had any problems. I haven't had any new charges. I don't even give a f**k."

The victim testified that Defendant's actions caused her and her children to live in fear. She was prescribed medication to cope with the negative impact that Defendant's actions had on her life. She testified that Defendant sent sexually explicit photographs of himself to her old cell phone after she told him that her minor child was using that phone. She further testified that Defendant threatened her adult daughters and said "explicit things about how they look, how fine they are, how sexy they are." Defendant went as far as threatening to rape the victim. She testified that Defendant threatened to "bust my head to the white meat [and] choke me till my eyes popped out of my head." She further testified that after Defendant was released on bond in this case, he continued to call her "saying [her] name and moaning on the phone." The victim opposed probation and testified that she hoped Defendant would serve his time in confinement.

The trial court found that Defendant was "severely mentally ill," and stated that it "sympathized with [Defendant's] diagnosis and the life he has had to lead" but that Defendant "has some control over himself." The court considered the victim's testimony regarding Defendant's conduct following his arrest, stating, "I believe [the victim] and I believe he has also been drinking alcohol and smoking marijuana." The court discredited Defendant's testimony on these two points and found that his alcohol and drug use "contributes to his inability to control himself." The court found that Defendant was on probation for similar charges at the time he was arrested in this case. The court noted that Defendant had "several prior arrests and convictions" dating back to 2003 but acknowledged that many of these charges were dismissed or not prosecuted. The court stated that Defendant had been "given break after break" and that "[p]eople have tried to stop him time and time again." The court found that Defendant had complied by taking his medication when he was previously convicted of harassment in 2023 and yet he continued to engage in criminal conduct despite taking his medication. As to Defendant's conduct in this case, the court found that he engaged in "horrible behavior, very serious conduct," including threatening to kill the victim, "all over nothing." The court denied the request for probation and ordered that Defendant serve his consecutive sentences in confinement. This timely appeal followed.

**Analysis**

On appeal, Defendant contends that the trial court erred in denying his request for probation. Specifically, Defendant argues that (1) he does not have a "long history of criminal conduct"; (2) probation would not depreciate the seriousness of the offenses; and (3) less restrictive measures have been applied only once and they were successful. He further argues that the trial court failed to consider his mental health diagnosis and family support as mitigating factors. The State argues that the trial court did not abuse its discretion in denying probation. We agree with the State.

- 4 -

We review the length and manner of service of within-range sentences imposed by the trial court under an "abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The *Bise* standard applies to all sentencing decisions, *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014), including "questions related to probation or any other alternative sentence," *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012), and when reviewing misdemeanor sentencing decisions,[2] *State v. Ruiz*, 716 S.W.3d 439, 455 (Tenn. Crim. App. 2024). We will uphold the trial court's sentencing decision on appeal "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. The party appealing the sentence bears the burden of proving that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmt.; *State v. Cooper*, 336 S.W.3d 522, 525 (Tenn. 2011) (per curiam order).

Misdemeanor sentencing is governed by Tennessee Code Annotated section 40-35-302. Like felony sentencing, trial courts must "impose a sentence consistent with the purposes and principles" of our Sentencing Act." Tenn. Code Ann. § 40-35-302(b); *State v. Troutman*, 979 S.W.2d 271, 273-74 (Tenn. 1998). Unlike felony sentencing, trial courts need not make explicit findings on the record; rather, the record must only reflect that the court considered the purposes and principles of sentencing. *Troutman*, 979 S.W.2d at 274. Also unlike felony sentencing, trial courts are not required to conduct a separate sentencing hearing so long as they provide the parties "a reasonable opportunity to be heard" on the length and manner of service of the sentence imposed. Tenn. Code Ann. § 40-35-302(a). In imposing a misdemeanor sentence, trial courts "shall fix a specific number of months, days or hours," and "shall fix a percentage of the sentence that the defendant shall serve" before becoming "eligible for consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. § 40-35-302(b), (d). Finally, there are no sentencing ranges or presumptive minimum sentences for misdemeanor convictions. *State v. Webb*, 130 S.W.3d 799, 834 (Tenn. Crim. App. 2003) (no sentencing ranges);

---

[2] Citing *State v. Parker*, Defendant contends that the appropriate standard of appellate review is de novo with a presumption of correctness for the trial court's sentencing determinations. *See* 932 S.W.2d 945, 955 (Tenn. Crim. App. 1996). However, since *Bise*, this court has consistently applied the abuse of discretion with a presumption of reasonableness standard to our review of misdemeanor sentencing decisions. *See, e.g.*, *State v. Miller*, No. M2019-00214-CCA-R3-CD, 2020 WL 526094, at *12 (Tenn. Crim. App. Feb. 3, 2020); and *State v. Hampton*, No. W2018-00623-CCA-R3-CD, 2019 WL 1167807, at *12 (Tenn. Crim. App. Mar. 12, 2019) (collecting cases).

*Cooper*, 336 S.W.3d at 524 (no presumptive minimum sentences but noting statutory exceptions for DUI).

Under this statutory scheme, trial courts enjoy "great flexibility in fashioning a misdemeanor sentence." *Ruiz*, 716 S.W.3d at 458 (citation modified). Trial courts may place a defendant on probation, either immediately after sentencing, after a period of periodic confinement, or after a period of continuous confinement. Tenn. Code Ann. § 40-35-302(e). Trial courts may also order a defendant to serve his or her sentence in confinement. *See id*. Sentences involving confinement must be based on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to other likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1); *see Troutman*, 979 S.W.2d at 273 ("The sentencing considerations generally used in determining the manner of service for both misdemeanors and felony sentences are codified at Tenn. Code Ann. §§ 40-35-102, -103."). Whatever the sentence imposed, it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id*. at -103(4).

There is no presumption that defendants who are convicted of misdemeanors are eligible for probation; therefore, misdemeanants seeking probation bear the burden of establishing their suitability by showing that such will "subserve the ends of justice and the best interest of both the public and the defendant." *Ruiz*, 716 S.W.3d at 458 (citation modified). A trial court considering probation "should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *Id*. (citation modified). A defendant's potential (or lack thereof) for rehabilitation or treatment should also be considered. Tenn. Code Ann. § 40-35-103. "Candor is a relevant factor in assessing a defendant's potential for rehabilitation, and the lack of candor militates against the grant of probation." *State v. Souder*, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002) (citation modified).

Here, in denying probation the trial court relied upon the "nature and circumstances of the offense"—which involved conduct that spanned more than a year and included repeated sexually explicit phone calls, unwanted nude photographs, and threats of violence toward both the victim and the victim's children. The court also considered Defendant's criminal record when it found that he was on probation for a separate harassment conviction at the time of his arrest in this case. The court properly relied upon both considerations in finding that Defendant's conduct and criminal history militated against his potential for rehabilitation. *See, e.g.*, *Ruiz*, 716 S.W.3d at 458. Although the court was not permitted to consider Defendant's arrest history as evidence of a "long history of criminal conduct" for the purposes of ordering confinement, it was permitted to infer from the presentence report Defendant's social history and background. *See, e.g.*, *State v. Cecil*, M2011-1210-CCA-R3-CD, 2012 WL 2674521, at *7-8 (Tenn. Crim. App. July 6, 2012) (concluding trial court did not err when it considered defendant's arrest history that did not result in convictions as evidence of his "generally troublesome relationship history" but not for purposes of criminal history), *rev'd on other grounds*. The presentence report indicated that Defendant had been arrested six times since 2015 for harassment, stalking, and violating a restraining order. The trial court recounted these instances at the sentencing hearing, noting they all alleged similar conduct, but explicitly acknowledged that all but five were dismissed. In our view, the court relied upon this background to assess Defendant's ability to relate to others while taking his medication. As to Defendant's candor, the court found that Defendant was untruthful when he testified at the sentencing hearing that he did not use alcohol or marijuana daily but told the presentence investigator that he did. Both Defendant's social history and background and his lack of candor with the court weigh against the grant of probation. *See, e.g.*, *Cecil*, 2012 WL 2674521 at *7-8; *Souder*, 105 S.W.3d at 608.

As to the confinement factors, *see* Tenn. Code Ann. § 40-35-103(1), the trial court relied upon Defendant's criminal history and the fact that less restrictive measures had been applied unsuccessfully. As stated above, the court properly considered that Defendant's conduct in this case spanned more than a year, continued after his arrest, and occurred while he was on probation for a similar offense.

From the record, we conclude the trial court's sentencing decision was consistent with the purposes and principles of our Sentencing Act and nothing in the record overcomes the presumption of reasonableness to which it is entitled. Therefore, the trial court acted within its discretion when it denied probation and ordered confinement. Although Defendant argues that the trial court should have considered certain mitigating factors, such factors were not relevant to the trial court's manner of service determination, and we will not consider them here. *See Ruiz*, 716 S.W.3d at 459 (concluding defendant "misapprehends the role that enhancement and mitigating factors play in misdemeanor sentencing" as the statutory factors are relevant only in calculating the percentage of

service before becoming eligible for rehabilitative programs under Code section 40-35-302(d)). Accordingly, Defendant is not entitled to relief.

Although we affirm the trial court's denial of alternative sentencing, we note that the two judgments fail to express what percentage of the sentence Defendant would serve in confinement before he became eligible for certain early release programs. Tennessee Code Annotated section 40-35-302(d) provides: "In imposing a misdemeanor sentence, the court shall fix a percentage of the sentence that the defendant shall serve" before being eligible for "consideration for work release, furlough, trusty status and related rehabilitative programs." Indeed, "the plain language of section 40-35-302(d) requires the trial court to fix a percentage of the sentence . . . in all misdemeanor cases." *State v. Sanders*, No. M2023-01148-CCA-R3-CD, 2024 WL 1739660, at *5 (Tenn. Crim. App. Apr. 23, 2024) (citation modified), *perm. app. denied* (Tenn. July 17, 2024). The statute further provides that if no percentage is expressed on the face of the judgment, then "the percentage shall be considered zero percent (0%)." Tenn. Code Ann. § 40-35-302(d). Yet "[w]hen this court has been faced with a transcript of the sentencing hearing clearly indicating the trial court's intention that the defendant's percentage is *not* zero percent, however, we have deferred to the trial court's express pronouncement as reflected in the transcript." *State v. Russell*, 10 S.W.3d 270, 278-79 (Tenn. Crim. App. 1999) (emphasis in original); *see also State v. Snodgrass*, No. E2011-02637-CCA-R3-CD, 2013 WL 785057, at *8 (Tenn. Crim. App. Mar. 1, 2013) (remanding to the trial court "to address the percentage of the sentence to be served and specify in it in the judgment").

Because this issue was not raised by either party, we requested supplemental briefing to ensure the parties were afforded an opportunity to be heard. Both Defendant and the State submitted briefs, and both agreed that the lack of a percentage did not affect our merits decision regarding the single issue raised on appeal—the denial of probation. Here, the record clearly reflects the trial court's intention that Defendant serve his sentence in confinement, and thus the trial court's "intention that the defendant's percentage is *not* zero percent." *Russell*, 10 S.W.3d at 278. Accordingly, we remand to the trial court for the limited purpose of correcting the judgments to include a percentage of service in accordance with Tennessee Code Annotated section 40-35-302(d). The trial judge who originally held the hearing on the petition has since retired. Upon remand, the trial judge to whom this case is assigned may set a percentage based solely upon the record; however, if it is not possible to rely solely upon the record, the trial court may conduct a limited hearing to consider the appropriate mitigating and enhancement factors as required by the statute.

## Conclusion

For the reasons above, we affirm the judgments of the trial court, but we remand for the trial court to set a percentage of service for Defendant's sentences on the judgments.


_____s/ Matthew J. Wilson_
MATTHEW J. WILSON, JUDGE