IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 12, 2011

**STATE OF TENNESSEE v. CHARLIE B. YORK**

**Direct Appeal from the Circuit Court for Fayette County**
**No. 6379    J. Weber McCraw, Judge**

**No. W2010-01165-CCA-R3-CD  - Filed July 22, 2011**

A Fayette County jury convicted the Defendant, Charlie B. York, of driving under the influence of an intoxicant ("DUI"), and the trial court found that the Defendant had violated the implied consent law with a prior DUI conviction.  The trial court sentenced the Defendant to eleven months and twenty-nine days for the DUI conviction, fifteen days of which were to be served in jail, with the remainder on probation.  For the implied consent violation, the trial court suspended the Defendant's driver's license for two years.  On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his convictions; and (2) the trial court erred when it sentenced him to more than the mandatory minimum sentence.  After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, Jr., J., joined.

Kari I. Weber, Somerville, Tennessee, for the Appellant, Charlie B. York.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Mike Dunavant, District Attorney General; Matthew B. Hooper, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's stop and subsequent DUI arrest, which occurred on May 17, 2009.  A Fayette County grand jury indicted the Defendant for DUI and violation

of the implied consent law when previously convicted of a DUI. At the Defendant's jury trial on the DUI charge, the following evidence was presented:

Chris Rockholt, an officer with the Fayette County Sheriff's Department, testified that at 3:00 a.m. on the morning of May 17, 2009, he responded to a call about a car that had driven off the road on Highway 194 in Fayette County. After arriving at the accident scene, the officer suspected that the driver of the car that had driven off the roadway was intoxicated, so he called another deputy for assistance. While waiting for that deputy, the officer blocked the road for the tow truck, and, as a result, traffic on the highway became backed up. Officer Rockholt approached the Defendant's car, which was in the line of cars waiting for the tow truck to remove the vehicle, to inform the Defendant that he might have to wait a while for the tow truck to move the other vehicle.

Officer Rockholt testified that, when he spoke with the Defendant, who was driving with several passengers, he smelled the strong odor of alcohol. Officer Rockholt instructed Deputy Phillips, who had arrived at the scene and was assisting with traffic, to investigate whether the Defendant was intoxicated.

On cross-examination, Officer Rockholt testified that he never personally observed the Defendant driving and that the Defendant was not involved in the accident to which the officer was originally called.

Dale Phillips, a deputy with the Fayette County Sheriff's Department whose responsibilities primarily included investigating DUIs, testified that he smelled a "heavy odor of alcohol" coming from the Defendant's vehicle. He asked the Defendant to exit his vehicle, and the Defendant appeared "unsteady" on his feet. The Defendant swayed back and forth while standing, and the deputy had difficulty understanding the Defendant's speech. The officer testified he administered three standardized field sobriety tasks: the HGN task, the heel-to-toe step task, and the one-leg stand task. Additionally, he asked the Defendant to recite the ABCs. The officer agreed that, normally, when a suspect performs the heel-to-toe step task there is a painted line upon which he can perform this task. The Defendant, in contrast, did not have a painted line to walk along. Consequently, he was asked to walk in a straight line. Deputy Phillips testified that the Defendant performed "extremely poorly" on all of the tests and displayed "no balance at all." Further, he failed to follow the deputy's instructions on one of the tests and could not complete that task at all.

Deputy Phillips testified that he had interacted with the Defendant prior to the stop in this case. He said that, on those occasions, the Defendant did not appear to have any difficulty walking. The deputy acknowledged that the Defendant had a speech impediment but said the impediment was far more pronounced with alcohol. The State then offered, and

the trial court admitted, the videotape recording of the Defendant performing the field sobriety tasks.

The video recording of the stop of the Defendant shows the Defendant having difficulty retrieving his identification from his wallet. The Defendant then stated through slurred speech that he had one beer. When the officer said that he could not understand the Defendant, the Defendant responded "[W]ell, this is how I talk."

The officer transported the Defendant out of the roadway and began some field sobriety tasks. The officer conducted the HGN task. When the officer asked the Defendant to do another field sobriety task, the Defendant said he could not, under normal circumstances, walk straight. He agreed, however, to attempt the field sobriety task. While almost unintelligible, the Defendant said he had "bad feet" and sometimes had difficulty walking. The officer explained the heel-to-toe step task, asking the Defendant to walk nine steps away from the patrol car touching his heel of one foot to the toe of his other foot. The officer told the Defendant to take small steps to turn around, and take nine steps back to the patrol car in the same heel-to-toe fashion. The Defendant appeared to have difficulty standing in the starting position with one foot in front of the other. The Defendant then began the task and stumbled on the fourth step. He started again, completed nine steps, and turned around. He then stumbled on the first return step, took a significant period of time to regain his balance, and stumbled again on the third step. The Defendant restarted the task several times but eventually completed nine steps returning to the patrol car. During the task, he uttered several good-natured phrases.

The officer asked the Defendant to come toward him for another field sobriety task, and the Defendant appeared wobbly on his feet, often losing his balance. After the Defendant became steady, the officer asked the Defendant to raise either of his feet six inches off the ground and count, beginning at 1001, until the officer said to stop. The officer then demonstrated this field sobriety task. The Defendant attempted to perform this task by marching toward, and then away from, the patrol car. The officer abandoned this attempt to have the Defendant complete this task and asked the Defendant if he knew his ABCs. The Defendant, who was swaying while standing, responded again in a slurred unintelligible manner and then attempted the ABCs. The Defendant missed letter "E" and several other letters before stopping at letter "P ... I."

The officer informed the Defendant that the officer believed that the Defendant had consumed too much alcohol to be driving, and the Defendant said, "This is how I talk, this is how I walk."

After the videotape was played for the jury, Deputy Phillips testified that he read the

Defendant the implied consent form, which requests that the Defendant submit to a blood alcohol test or sign the form. The Defendant said he did not want to sign the form, so the deputy wrote "refused" on the form.

On cross-examination, Deputy Phillips agreed he never saw the Defendant driving his vehicle and could not testify about the Defendant's ability to operate a motor vehicle on the night in question. The officer agreed that the Defendant complied with the officer's request to sit on the bumper before the field sobriety tasks began, and the Defendant also indicated that he had some difficulty with his feet. The officer agreed that he laughed at some points during the tasks.

Deputy Phillips agreed that he can conduct other field sobriety tasks if a suspect indicates they have problems with their feet, but that those tasks are not standardized. These unstandardized tasks include having the suspect touch their nose, count their fingers, and close their eyes for thirty seconds. The deputy did not offer these tasks to the Defendant because they are not standardized tasks and because the Defendant had agreed to try the other standardized tasks.

On redirect examination, Deputy Phillips testified that, when he first encountered the Defendant, the Defendant was seated in the driver's seat of the Defendant's car while the car was running. The deputy testified he felt it was "obvious" that the Defendant was under the influence of alcohol.

The trial court then, outside the presence of the jury, admitted into evidence the Defendant's prior driving history, which showed he had been convicted on three previous occasions for DUI. The court stated it would consider this evidence when it determined whether the Defendant violated the implied consent law while previously being convicted of DUI.

The Defendant called John Franklin to testify, and Franklin said he was with the Defendant at the time of the Defendant's arrest. The two had been together since the early morning of May 16, the day before the Defendant's arrest. Franklin said he went to the Defendant's house and asked the Defendant if he wanted to go to a club that night. At the time, the Defendant's son had the Defendant's car, and the Defendant's son spilled whiskey in the car. When the Defendant's son returned with his car, Franklin noticed that it smelled strongly of whiskey, and he told the Defendant that, if they were pulled over, they would be in trouble because of the smell.

Franklin testified he was concerned when the police stopped the Defendant, because the Defendant had difficulty speaking and also had difficulty with his legs and ankles due to

arthritis and gout. He offered to help the officer understand the Defendant, and the officer told him to get back into the car and have a seat until given further instructions.

On cross-examination, Franklin testified his own driver's license had been suspended. He also agreed that he had a prior conviction for making a false police report in 2001.

Based upon this evidence, the jury convicted the Defendant of DUI. The trial court found the Defendant guilty of violating the implied consent law with a prior DUI. The trial court sentenced the Defendant to 11 months and 29 days at 75 percent, all of which was suspended after the service of fifteen days. He also revoked the Defendant's license for one year. The trial court agreed to allow the Defendant to serve his sentence on the weekends so the Defendant could care for his wife. The trial court suspended the Defendant's license for two years for his violation of the implied consent law.

It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his convictions; and (2) the trial court erred when it sentenced him to more than the mandatory minimum sentence.

## A. Sufficiency of Evidence

The Defendant contends that the evidence presented is insufficient to sustain his convictions because the testimony presented by the State did not establish that he was under the influence to such a degree that he was unable to safely operate a vehicle. Further, the Defendant asserts that, because police requested he submit to blood alcohol testing at the jail rather than at the hospital, the trial court erred when it found him guilty of violating the implied consent law. The State counters that the evidence is sufficient to sustain the Defendant's DUI conviction because it proved that the Defendant exercised physical control over his vehicle while intoxicated.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence,

circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W .2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

## 1. Sufficient Evidence to Support DUI Conviction

The Defendant contends that the evidence presented is insufficient to sustain his DUI

conviction because the State failed to establish that he was under the influence to such a degree that he was unable to safely operate a vehicle. He asserts that neither officer saw him driving, and Deputy Phillips failed to administer alternative tests considering that the Defendant had difficulty with his feet.

Tennessee Code Annotated section 55-10-401(a)(1) (2009), the DUI statute, provides, in pertinent part, that "[i]t is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . while . . . [u]nder the influence of any intoxicant[.]" The statute imposes strict liability without reference to a culpable mental state. *See State v. Turner*, 953 S.W.2d 213, 216 (Tenn. Crim. App. 1996). No requirement exists that the State prove its case by more than the arresting officer's testimony in order to establish proof beyond a reasonable doubt. *See State v. Vassar*, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993).

The Defendant first contends that the State's evidence failed to establish that he was under the influence to such a degree that he was unable to safely operate a vehicle. The arresting officer, however, testified that he felt that it was "obvious" the Defendant was under the influence of alcohol considering, among other things, the Defendant's performance on the field sobriety tasks, the odor of alcohol emanating from him, and his swaying while standing. As previously stated, the officer's testimony alone is sufficient to establish the Defendant's intoxication. *Vassar*, 870 S.W.2d at 544. Further, the jury viewed the videotape of the Defendant performing the field sobriety tasks. From this evidence, a rational trier of fact could conclude that the Defendant was driving while under the influence of an intoxicant.

Our review of the evidence, including the videotape, confirms the jury's finding. The evidence proved that the Defendant smelled strongly of alcohol. He admitted that he had consumed at least one alcoholic beverage before driving. The Defendant had difficulty retrieving his driver's license from his wallet, swayed while standing, and had significantly slurred speech. He also said, at times, nonsensical things, failed to follow instructions with regard to the field sobriety tasks, could not complete the field sobriety tasks, and could not recite his ABCs. The Defendant clearly appeared intoxicated in the videotape.

The Defendant next contends that his conviction cannot stand because neither officer saw him driving. In *State v. Lawrence*, 849 S.W.2d 761 (Tenn. 1993), our Supreme Court interpreted the meaning of the words "physical control" in Tennessee Code Annotated section 55-10-401(a). 849 S.W.2d at 705-06. In the opinion, the Court stated, "It is our opinion that the Legislature, in making it a crime to be in physical control of an automobile while under the influence of an intoxicant, 'intended to enable the drunken driver to be apprehended before he strikes.'" *Lawrence*, 849 S.W.2d at 765 (quoting *Hughes v. State*,

535 P.2d 1023, 1024 (Okla. 1975)). In the case under submission, the Defendant was seated in the driver's seat of his vehicle while the vehicle was running. The vehicle was stopped at the scene of an accident in which the Defendant's vehicle was not involved. Thus, we conclude that the Defendant was clearly in physical control of his vehicle when the officers approached him.

The Defendant next asserts that his conviction cannot stand because he was not offered alternative field sobriety tasks in light of the fact that he had difficulty with his feet. The officer gave the Defendant three standardized field sobriety tasks and then also asked him to recite the ABCs. The Defendant's failure to follow instructions on the one-legged stand test, when he marched toward and away from the patrol car rather than stand with one leg raised, had nothing to do with problems he had with his feet. Further, his inability to recite the ABCs was not related to any foot problems. We conclude that the evidence was sufficient to support the Defendant's conviction for driving under the influence. The Defendant is not entitled to relief on this issue.

## 2. Sufficient Evidence to Support Implied Consent Finding

The Defendant next asserts the trial court erred when it found him guilty of violating the implied consent law because the Defendant was advised of the request for him to submit to the test at the jail and not at the hospital.

The implied consent law states that:

[a]ny person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood . . . . However, no such test or tests may be administered pursuant to this section, unless conducted at the direction of a law enforcement officer having reasonable grounds to believe the person was driving while under the influence of alcohol[.]

T.C.A. § 55-10-406(a)(1) (2009). This statute goes on to state that a person is guilty of violating the implied consent law where he or she refuses to take a blood test after having been placed under arrest and asked by a law enforcement officer to submit to such test. T.C.A. § 55-10-406 (2009). This Defendant fails to offer, and we fail to find, any support for his contention that this law requires that he be at a hospital, rather than the jail, when requested by a law enforcement officer to submit to a blood test. He is not entitled to relief on this issue.

## B. Sentencing

-8-

The Defendant contends that the trial court erred when it sentenced him to serve fifteen days in jail, which is more than the mandatory minimum sentence of forty-eight hours in jail. Further, he asserts that the trial court erred when it failed to state on the record the reason for imposing more than the mandatory minimum jail sentence. The State counters that the Defendant has failed to show that the trial court abused its discretion when it sentenced him.

Misdemeanor sentences must be specific and in accordance with the principles, purposes, and goals of the Criminal Sentencing Reform Act. T.C.A. §§ 40-35-104, -302 (2009); *State v. Palmer*, 902 S.W.2d 391, 393 (Tenn. 1995). We review misdemeanor sentencing de novo with a presumption of correctness. T.C.A. §§ 40-35-401(d), -402(d). "[T]he presumption of correctness . . . is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party bears the burden of overcoming this presumption of correctness and showing that the trial court erred. T.C.A. § 40-35-401(d) (2009) Sentencing Comm'n Cmts.

The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. T.C.A. § 40-35-302. A convicted misdemeanant has no presumption of entitlement to a minimum sentence, and trial courts are afforded considerable latitude in misdemeanor sentencing. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999); *State v. Baker,* 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997); *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, the mandatory sentence for DUI, first offense, is eleven months, twenty-nine days, with a minimum of forty-eight hours served in confinement. *See* T.C.A. § 55-10-403(a)(1) (2006); *see also State v. Troutman*, 979 S.W.2d 271, 273 (Tenn.1998) ("A defendant convicted of DUI automatically receives a sentence of eleven months and twenty-nine days."). The trial court's sole function in setting the length of a sentence for a DUI conviction is "to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended." *State v. Combs*, 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996).

The misdemeanor sentencing statute requires that the trial court consider the enhancement and mitigating factors when calculating the percentage of the sentence to be served in "actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." T.C.A. § 40-35-302(d) (2006); *Troutman*, 979 S.W.2d at 274. Our Supreme Court has observed that "[i]n addition to the statutory considerations for issuing sentences of confinement, the misdemeanor sentencing statute merely requires a trial judge to consider enhancement and mitigating factors when calculating

the percentage of a misdemeanor sentence to be served in confinement." *Troutman*, 979 S.W.2d at 274. This Court has stated:

> In felony sentencing, the trial court has an affirmative duty to *state in the record*, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. § 40-35-209 (c) (1997); Tenn. Code Ann. § 40-35-210(f) (Supp. 1998); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). In contrast, the misdemeanor sentencing statute only requires that the trial court *consider* the enhancement and mitigating factors when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. §§ 40-35-302(d) (1997); *Troutman*, 979 S.W.2d at 274.

*State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999) (emphasis original). Our statutory system concerning misdemeanor sentencing is designed to provide trial courts with continuing jurisdiction and a great deal of flexibility. *See* T.C.A. § 40-35-302(d), Sentencing Comm'n Cmts.; *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995).

In this case, during the trial, the trial court received and said it would consider the Defendant's prior criminal record. The Defendant's criminal record shows that he has been convicted of DUI on three previous occasions: in 1985, 1993, and 1994. The Defendant was also previously convicted for driving on a revoked license. Thus, the record supports application of enhancement factor (1), that the Defendant has a previous history of criminal convictions in addition to those necessary to establish his range. *See* T.C.A. § 40-35-114(1) (2009). . This enhancement factor alone supports the trial court's calculation that fifteen days was an appropriate percentage of his sentence to be served in confinement. *See Troutman*, 979 S.W.2d at 274. The Defendant is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and the applicable law, we conclude the evidence is sufficient to support the Defendant's convictions and that he was properly sentenced. We, therefore, affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE