# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 17, 2016

## RALPH BYRD COOPER, JR. v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Anderson County
### No. B4C00006   Donald R. Elledge, Judge

---

### No. E2015-01071-CCA-R3-PC – Filed June 3, 2016

---

An Anderson County jury found the Petitioner, Ralph Byrd Cooper, Jr., guilty of aggravated rape. The trial court sentenced the Petitioner as a violent offender to life in prison without the possibility of parole. The Petitioner's conviction was affirmed by this Court and our Supreme Court affirmed his convictions but remanded the case for resentencing. *State v. Ralph Byrd Cooper, Jr.*, 321 S.W.3d 501, 507-08 (Tenn. 2010). On remand, the trial court sentenced the Petitioner as a career offender to sixty years of incarceration, and this Court affirmed his sentence on appeal. *State v. Ralph Byrd Cooper, Jr.*, No. E2012-01023-CCA-R3-CD, 2013 WL 3833412, at *1 (Tenn. Crim. App, at Knoxville, July 22, 2013), *perm. app. denied* (Tenn. Nov. 14, 2013). The Petitioner filed a petition for post-conviction relief, which the post-conviction court denied after a hearing. On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition. He asserts that the post-conviction court erred: (1) when it denied his request for a continuance to allow him to locate material witnesses and to allow him to obtain new post-conviction counsel; and (2) when it determined that he received the effective assistance of counsel at trial. After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J. and ROBERT H. MONTGOMERY, JR., J., joined.

Casey Daganhardt, Clinton, Tennessee (at post-conviction hearing) and Ralph Byrd Cooper, Jr., Mountain City, Tennessee, Pro Se (on appeal), for the appellant, Ralph Byrd Cooper, Jr.

Herbert E. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Dave Clark, District Attorney General, Anthony Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Facts
## A. Trial

This case arises from the Petitioner's rape of the victim in Oak Ridge, Tennessee. Based on this incident, an Anderson County grand jury indicted the Petitioner for aggravated assault and aggravated rape. The State dismissed the aggravated assault charge prior to trial. On direct appeal, our Supreme Court summarized the underlying facts of the case as follows:

> According to the victim's testimony at trial, she met [the Petitioner] while cruising in a Walmart parking lot in Oak Ridge, Tennessee, in December 2002. They later exchanged telephone numbers. On another occasion, the victim and [the Petitioner] visited his mother's house, where he lived in a basement apartment.
>
> On January 29, 2003, the victim called [the Petitioner] to ask if she and her friend could "hang out" with him. The victim and her friend went to [the Petitioner's] apartment. After spending some time there, they left with [the Petitioner] in his truck to buy alcohol. While riding around, the victim drank both beer and Jack Daniel's. They later went to a party.
>
> The victim testified that she did not remember leaving the party because she was intoxicated. She woke up in [the Petitioner's] bed. [The Petitioner] was on top of her, and they were both naked. He had his hands around her throat, and he threatened to kill her if she screamed. He attempted to have intercourse with her. She told him to stop. He left the room to obtain a lubricant. When he returned, he penetrated her vagina. They both fell asleep.
>
> When the victim woke up in the morning, she hugged [the Petitioner] at his request and then left the house. Later that day, she reported the incident to the police. Photographs taken that day by the police show red marks on her neck and scratches on her face. [The Petitioner's] defense at trial was that his sexual acts with the victim were consensual.

*Cooper*, 321 S.W.3d at 503-04. The trial court imposed a sentence of life without the possibility of parole, however, on appeal, our Supreme Court determined that the State

had not filed a timely notice of its intention to have the Petitioner sentenced as a repeat violent offender, which was required for a sentence of life without the possibility of parole. Our Supreme Court affirmed the Petitioner's conviction and remanded the case for resentencing. *Id.* at 506-08. On remand, the Petitioner was resentenced to sixty years of incarceration as a career offender. *Cooper*, 2013 WL 3833412, at *1. This Court affirmed his sentence. *Id.*

## B. Post-Conviction Hearing

On January 14, 2014, the Petitioner filed *pro se* a petition for post-conviction relief, alleging for multiple reasons that he had received the ineffective assistance of counsel and that his conviction and sentence were illegal. On April 13, 2015, with the assistance of an appointed attorney, the Petitioner filed a supplementary brief in support of the petition, alleging additional grounds for relief.

On May 1, 2015, the post-conviction court held a hearing during which the Petitioner addressed the post-conviction court about problems with post-conviction counsel. The Petitioner stated that he had written to post-conviction counsel three or four times and received no response. The Petitioner stated that post-conviction counsel met with him only after the post-conviction court had instructed counsel to do so. After that meeting, the Petitioner did not hear from post-conviction counsel again, despite sending him several more letters. The Petitioner stated that he had requested that post-conviction counsel contact as many as nine witnesses and provided him their contact information, but that post-conviction counsel had failed to contact the witnesses. The Petitioner stated that everything he had asked post-conviction counsel to do had not been done, including subpoenaing the witnesses, filing a timely post-conviction petition following counsel's appointment, and investigating his ineffective assistance of counsel claims. Further, the Petitioner asserted that post-conviction counsel failed to read the witness statements that the Petitioner had provided in support of the allegations in the post-conviction petition.

Post-conviction counsel stated that, until the day of the hearing, he was "totally unaware" that the Petitioner had a problem with his representation. Post-conviction counsel stated that he had visited the Petitioner twice and had productive meetings with him both times. During both meetings, post-conviction counsel and the Petitioner went over the Petitioner's file and post-conviction counsel stated that he reviewed the file "at length." Post-conviction counsel stated: "And in keeping with what I believed was good lawyering I made some decisions as a lawyer as to what was relevant and what should be brought before the Court today and what was not. And this is, I think, the essence of where [the Petitioner] and I disagree." Post-conviction counsel stated that the Petitioner wanted him to present everything in his file to the court, rather than make strategic

3

decisions about what should be presented and concentrating on the parts of his case that counsel determined had merit. Post-conviction counsel reiterated that he had reviewed everything in the Petitioner's file "thoroughly." He stated that he had been practicing law for thirty-four years and had handled numerous serious cases, including homicide and sex crimes. Post-conviction counsel stated that the Petitioner had indicated to him that the Petitioner did not wish to retain his legal services any longer. The Petitioner responded that he was not asking post-conviction counsel to present anything frivolous and that he had legal bases for each of his arguments. The Petitioner stated that he was not ready to proceed with the post-conviction hearing and asked the post-conviction court to set the hearing for a later date.

The post-conviction court told the Petitioner it would not grant his request for a continuance and that the hearing was going to be held, regardless of whether the Petitioner wanted post-conviction counsel to represent him and regardless of whether the Petitioner wanted to participate. The Petitioner responded that he was not ready to proceed because he wanted to subpoena as many as twelve witnesses to testify at the hearing. He stated that he did not want post-conviction counsel to continue representing him at the hearing and told the post-conviction court that he would not participate in the hearing.

The post-conviction hearing proceeded, without the Petitioner, and post-conviction counsel called the Petitioner's trial counsel to testify. Trial counsel testified that he was a criminal attorney in Oak Ridge and had been practicing since 1999. Trial counsel testified that he represented the Petitioner on a rape charge. While awaiting trial, the Petitioner was arrested for robbery and went to prison on that charge, which delayed adjudication of his rape charge. Against trial counsel's advice, the Petitioner went to trial on his rape charge. Trial counsel testified that he advised the Petitioner not to go to trial because the Petitioner had confessed and said during his confession that the victim had told him "no" during their encounter but that he had proceeded to have intercourse with her. Trial counsel did not file a motion to suppress the confession because the Petitioner gave his confession when he was not under arrest but at the police station voluntarily and was allowed to leave the station after he confessed.

Trial counsel stated that he had reviewed the post-conviction petition. Trial counsel testified that, prior to trial, he subpoenaed "most witnesses" that the Petitioner requested. He stated that the Petitioner had trouble understanding that the fact that the Petitioner and the victim drank alcohol together did not mean their intercourse was consensual. At trial, trial counsel put on evidence that the victim agreed that she drank alcohol with the Petitioner on several occasions and that the two had engaged in "some degree of foreplay" together. However, the issue remained as to whether their sexual intercourse was consensual. Trial counsel recalled that several of the Petitioner's

4

witnesses were impeachable because they were victims of the robbery committed by the Petitioner. Trial counsel clarified that he "subpoenaed witnesses that [he] thought would be helpful to his case without bringing in that he had robbed his aunt and grandmother . . . that were wheelchair bound while the case was pending."

Trial counsel testified that he interviewed all of the Petitioner's family members several times but did not locate the Petitioner's friends. He described the Petitioner as "vague" about the people he associated with. Trial counsel did not consider these witnesses a high priority because their testimony would have been "cumulative in nature" and because they were not present when the incident with the victim took place. Trial counsel recalled that he called the Petitioner's aunt to testify because she was not a victim of the robbery and could testify to the victim's demeanor on the day after the incident. Trial counsel testified that he investigated the party that the Petitioner and the victim had attended. Another attendee came to trial counsel's office, but his statements were not helpful because he described affectionate behavior at the party between the Petitioner and the victim but also said that the victim had at times acted disinterested in the Petitioner.

Trial counsel stated that he was prepared for trial and that he had knowledge of the victim's inconsistent statements, while the State did not, and he intended to use the statements to impeach the victim. He recalled that the victim admitted on the stand that she had lied several times about the incident. Trial counsel testified that he did not obtain a rape kit because there was no question about whether the sexual encounter had occurred, rather, the argument was over whether it was consensual. Trial counsel testified that he questioned the victim during the trial about whether her boyfriend or father caused her injuries. He also stated that he was hesitant to ask the victim too many questions about her sexual past or her other relationships, as rape victims are generally protected from having their sexual histories presented to juries if their history is not relevant to the case at hand pursuant to the rape shield law. Trial counsel agreed that, during closing argument, he made a comment about the Petitioner's appearance. He stated that the Petitioner had many tattoos, some "racist in nature," so he attempted to show the jury that, based on the Petitioner's appearance, the victim should have known she was not going home with a "choir boy" on the night of the incident. Trial counsel "thought it better" to admit to the jury that the Petitioner was out that night looking for a "good time" and that the victim should have suspected as much.

On cross-examination, trial counsel stated that he had tried jury cases before, including rape and rape of a child cases. Trial counsel stated that he met with the Petitioner before trial to discuss strategy. Trial counsel's strategy was to impeach the victim's testimony, which he stated he did successfully because the victim admitted to lying about the incident. He recalled that the victim admitted there was no struggle or screaming and to other facts that trial counsel felt were "pretty damaging." Trial counsel

5

said his other strategy was to show that the victim knew what she was "getting into" when she got into the Petitioner's vehicle that night.

The post-conviction court denied the petition, stating the following:

The Court well remembers the trial in this case. The statements made to the Court by and through direct examination by [trial] counsel is exactly what occurred in this case.

[The Petitioner] went to the police department. [The Petitioner] voluntarily went down there, voluntarily made the statement and voluntarily left. [The Petitioner], in his petition, certainly hasn't complied with T.C.A. [§] 40-30-104(e) concerning any facts set out in the petition as to the allegations. He could have set out, for example, . . . the witnesses he claims [trial counsel] should have subpoenaed, what they would have said and how it would have changed the outcome of the trial. He hadn't done that. But that aside, this Court finds that the performance of [trial] counsel in this case was exemplary. The Court finds, just as was testified to today, that all these issues that [the Petitioner] is raising; the victim herself acknowledged. She acknowledged the relationship she had with him. She acknowledged that he would buy her beer and she'd go out drinking with him. . . . She acknowledged . . . and [the Petitioner] acknowledged this [sexual] act. There is no need for a rape kit because, frankly, it was sex that [the Petitioner] acknowledged that he performed on the victim. . . . [The Petitioner] acknowledged that [the victim] said no. He acknowledged that he continued [to have sex with the victim] after she said no on more than one occasion. . . . There is not a witness that he could bring forth to this trial that he didn't acknowledge the facts and grounds for him to be convicted in this trial. What he said was almost exactly consistent with what the victim said, including the victim's cross examination and careful cross examination by [trial] counsel in this case that she, in fact, had lied because she didn't want to look as bad to her family members. . . .

[The Petitioner] has not alleged anything that this Court finds by clear and convincing evidence that would cause this Court to find [trial] counsel deficient. Again, [the Petitioner] is the architect of his own demise. This Court, with finding that, therefore, would further find that there is nothing that he could present. He acknowledged what he did. . . . There is nothing that would alter the outcome of this trial in any way. So the Court finds that there has been no clear and convincing evidence and that this petition should be dismissed.

6

The post-conviction court subsequently filed an order memorializing its ruling from the bench. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition. He contends that the post-conviction court erred when it: (1) denied his request for a continuance to allow him to locate material witnesses and to allow him to obtain new post-conviction counsel; and (2) determined that he received the effective assistance of counsel at trial. The State responds that the post-conviction court properly exercised its discretion when it declined to continue the post-conviction hearing. The State further responds that the Petitioner received the effective assistance of counsel at trial. We agree with the State.

### A. Continuance

The Petitioner contends that the post-conviction court erred when it denied his request for a continuance of the post-conviction hearing. The Petitioner argues that he was unable to present evidence necessary to establish his ineffective assistance of counsel claim without the witnesses present and that post-conviction counsel failed to subpoena them. Thus, he claims it was futile for the hearing to be held because he had no chance to prevail on his claim. He also contends that the trial court erred when it did not grant a continuance to appoint the Petitioner new post-conviction counsel because he was prejudiced by post-conviction counsel's representation and because post-conviction counsel had a conflict of interest. The State responds that the post-conviction court did not err because the proof presented at the hearing showed that presenting the additional witnesses would have been "futile." The State further responds that the Petitioner cannot prove he was prejudiced by post-conviction counsel's representation and that the Petitioner has waived his conflict of interest argument by raising this issue for the first time on appeal.

The decision to grant a motion for a continuance is left to the trial court's discretion, and a denial of the requested continuance will not be overturned on appeal absent a clear showing of an abuse of that discretion. *State v. Russell*, 10 S.W.3d 270, 275 (Tenn. Crim. App. 1999) (citing *State v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982); *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973)). We will reverse the denial of a continuance only if the trial court abused its discretion and the defendant was prejudiced by the denial. *State v. Thomas*, 158 S.W.3d 361, 392 (Tenn. 2005). "An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result

would have followed had the continuance been granted." *Id.* (citing *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995)).

At the post-conviction hearing, the Petitioner complained that post-conviction counsel had not subpoenaed the witnesses provided by the Petitioner and stated that he could not go forward at the hearing without the witnesses. The post-conviction court stated that post-conviction counsel was an experienced attorney who was making a choice about how to proceed at the hearing in the way he judged most effective, by raising only a portion of the Petitioner's arguments. The post-conviction court informed the Petitioner that it was his choice not to participate but that the hearing would proceed regardless. The Petitioner told the post-conviction court that he chose not to participate in the proceedings. In denying the petition, the post-conviction court stated that the Petitioner had not set out the facts supporting the allegations in his petition, including the witnesses he would have subpoenaed or how their testimony would have changed the outcome of the trial.

We conclude that the post-conviction court did not abuse it discretion when it denied the Petitioner's request for a continuance to subpoena witnesses and for appointment of new post-conviction counsel. We have reviewed the facts of the case, and we conclude that the witnesses the Petitioner sought to present at the post-conviction hearing would not have given testimony that would have changed the outcome of the trial. As the State points out, none of the proposed witnesses actually witnessed the victim and the Petitioner engaging in sexual intercourse and the consensual nature of the intercourse was a central issue at trial. The Petitioner has outlined the testimony of the proposed witnesses in his appellate brief and, based on our review of his summary, none of the witnesses' purported testimony would have demonstrated that the outcome would have been different. As to the issue of representation, post-conviction counsel was prepared to represent the Petitioner at the hearing, had reviewed the Petitioner's file at length, and sought to present several of the Petitioner's arguments that post-conviction counsel deemed most effective. The Petitioner chose not to allow post-conviction counsel to represent him. He has not demonstrated that he was prejudiced by the post-conviction court's denial of his request for a continuance. Accordingly, the Petitioner is not entitled to relief.

As to the Petitioner's argument that post-conviction counsel had a conflict of interest, we agree with the State that the Petitioner has waived this argument because he did not raise it at the hearing. *See State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) (citing Tenn. R. App. P. 36 for the proposition that "Issues raised for the first time on appeal are considered waived.")

**B. Ineffective Assistance of Counsel**

The Petitioner next contends that the post-conviction court erred when it determined that he received the effective assistance of counsel at trial. The Petitioner argues that his trial counsel failed to subpoena witnesses, made highly prejudicial and negative comments to the jury about the Petitioner's appearance, and presented a strategy of telling the jury that the victim "got what she asked for," which prejudiced the Petitioner. The State responds that all the proof shows that the Petitioner received competent representation. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. §40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In the matter at hand, the post-conviction court found that the performance of trial counsel was exemplary, and that the victim had herself acknowledged at trial many points raised by the Petitioner, including her relationship with the Petitioner, that she went out

and consumed alcohol with him, and that she decided to meet with him. The post-conviction court found that, during the investigation, the Petitioner voluntarily admitted to having sex with the victim and acknowledged that the victim told him "no," but that he proceeded with sexual intercourse. It found that trial counsel was not ineffective for failing to ask for a rape kit because the issue was not whether the Petitioner and the victim engaged in intercourse, but was whether the intercourse was consensual. The post-conviction court found that trial counsel was not ineffective for failing to call certain witnesses because those witnesses' testimony could not change his confession. The post-conviction court found that trial counsel conducted a careful cross-examination of the victim about her veracity and her statements made about the incident. The post-conviction court found that the Petitioner was unable to present evidence that would change the outcome of his trial.

We conclude that the post-conviction court's decision was supported by the evidence presented at the hearing. The record shows that trial counsel made an informed and deliberate decision to discredit the victim by cross-examining her with her multiple inconsistent statements. Trial counsel stated that the victim and the Petitioner were the only two witnesses to the incident, and thus the victim's veracity was at issue. Trial counsel stated that the Petitioner was unclear about what certain witnesses would testify about and stated that the Petitioner did not understand that their testimony was not helpful to his case. Trial counsel further stated that he did subpoena several of the Petitioner's witnesses, but that he did not want to call some of the Petitioner's witnesses because they were also the Petitioner's victims in a prior robbery. Trial counsel did call to the stand the witness who was not one of the Petitioner's prior victims. Trial counsel also testified that he felt he successfully impeached the victim and demonstrated her untruthfulness and that he felt this was the best strategy for the Petitioner to be acquitted. He also stated that he made the comment to the jury about the Petitioner's appearance in an attempt to show the jury that the victim knew the situation she put herself in.

Based upon this evidence, we agree that trial counsel was not ineffective. The witnesses proposed by the Petitioner were either not able to testify about the incident or were a liability because of their history with the Petitioner. Trial counsel chose a strategy of impeaching the victim because of her multiple inconsistent statements. The victim agreed at trial that she had not been truthful about the incident. Trial counsel's strategy at trial was well informed and tactical, in consideration of the unfavorable witnesses proposed by the Petitioner and in light of the fact that the Petitioner admitted to having intercourse with the victim. As this Court has previously noted, "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Counsel has discretion in conducting the defense and is entitled to use his best judgment in matters of trial strategy or tactics. *See McBee v. State*, 655 S.W.2d

191, 193 (Tenn. Crim. App. 1983). Thus, we conclude that the Petitioner failed to show that trial counsel's services fell outside the range of competence normally required of attorneys in criminal trials. *See Baxter*, 523 S.W.2d at 936. Having failed to show the first prong of the *Strickland* standard, the Petitioner has not met his burden of showing that he is entitled to post-conviction relief based upon trial counsel's performance. *Id.* The Petitioner is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude the post-conviction court properly denied the Petitioner's petition for post-conviction relief. We further conclude that the post-conviction court did not err when it denied the Petitioner's request for a continuance. In accordance with the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE