IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 29, 2025 Session

## STATE OF TENNESSEE v. JAMAR LAQUINN FRAZIER

**Appeal from the Criminal Court for Knox County**
No. 99921    G. Scott Green, Judge

No. E2023-00887-CCA-R3-CD

The Defendant, Jamar Laquinn Frazier, appeals from his conviction for second degree murder following a jury trial.  In this appeal, the Defendant claims that the trial court  (1) denied him counsel of his choosing by denying his request to continue the trial date; (2) erred by allowing certain testimony at trial in violation of the law of the case doctrine and by allowing improper opinion, character, and hearsay testimony; and (3) erred by imposing the maximum twenty-five-year sentence.  Additionally, the Defendant argues that he is entitled to a new trial (4) due to the denial of funding for an investigator during the motion for new trial proceedings and (5) due to cumulative error.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

Melissa C. DiRado (at motion for new trial and on appeal), and Christopher M. Rodgers (at trial), Knoxville, Tennessee, for the appellant, Jamar Laquinn Frazier.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Charme P. Allen, District Attorney General; and D. Lawrence Dillon, Hector I. Sanchez, and Danielle Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## I.     FACTUAL AND PROCEDURAL HISTORY

The Defendant was charged with first degree premeditated murder in the July 3, 2012 killing of the victim, Christopher Melton. He was convicted as charged on January 25, 2016, following a jury trial, but the conviction was reversed by this court on appeal and remanded for a new trial. *See State v. Frazier*, No. E2018-00202-CCA-R3-CD, 2019 WL 2750138 (Tenn. Crim. App. July 1, 2019). In so doing, this court held that (1) the prosecutor's question implying that the defendant had been involved in a separate homicide was not relevant, and (2) testimony elicited by the prosecutor that the defendant possessed a firearm on dates prior to the murder was not relevant. *Id.* at *22-23.

On remand, the trial court scheduled the trial for April 2020. Due to the COVID-19 pandemic and the Tennessee Supreme Court's order of March 13, 2020, suspending in-person court proceedings, including jury trials, the Defendant's trial was continued. The Defendant was released on bond in May 2020, and on July 17, 2020, a new trial date of December 7, 2020, was agreed upon. At this proceeding, the trial court stated, "Unless [COVID-19] has shut this courthouse down, we're trying this case that day."

On October 26, 2020, the Defendant's counsel, who had represented him at the first trial and successfully on direct appeal, requested to withdraw from representation at the Defendant's direction, and the trial court granted his request. Upon appointing new trial counsel, the trial court stated its intention "to get an expeditious trial date." On October 30, 2020, the trial court reiterated that it wanted to "set this [case for trial] on a day where everybody [was] going to be in a position to try it, and there[ was] not going to be any real or legitimate excuses not to try it." At a subsequent setting, the parties selected and scheduled a trial date of April 26, 2021.

In each of the remaining proceedings leading up to the trial date, the trial court made clear that it intended to try the Defendant's case on that date. On February 3, 2021, in response to being informed that the lead prosecutor may have a trial set in another division on the same date, the trial court stated, "[I]f [the prosecutor] needs my help getting out of that other case, then he needs to come to me. This case is going to trial on April 26th." On March 18, 2021, in response to the prosecutor's objection to the Defendant's traveling out of state so close in time to the trial date, the trial court stated, "[S]o there's no misunderstanding with anyone who can hear my voice, this case is going to trial on April the 26th." Later in the same proceeding, the trial court reiterated, "I expect everyone to be ready on April the 26th and we'll pick a jury and try this case again."

- 2 -

On April 15, 2021, attorneys with the Logan-Thompson firm in Cleveland, Tennessee, appeared and advised the trial court that the Defendant had retained them three weeks previously, but they would only proceed with the representation if the trial date were continued for three to six months to allow them to prepare. After hearing argument from the parties, the trial court stated:

The dilemma that the Court has, gentlemen, is we're a year into a pandemic where—this Court for the calendar year of 2019, tried approximately twenty-nine or thirty jury trials. Last year, I tried two after March. And we are stacked up.

And the other dilemma that this Court has is that we have three Criminal Courts in Knox County, but [I have a very small] courtroom, which is not big enough to socially distance. So, [the other criminal court judges] and myself have had to map out and determine whose cases have priority, which ones get tried when. I have been given [another judge's courtroom] to try this case a week from Monday.

. . . .

And, you know, you never know, something may happen between now and the 26th which necessitates the case being continued, a witness problem or something that's still going to put you in a position to accept the fee and move forward. But I have to go to trial on the 26th.

So, with all due respect, I have to say we're going to trial on the 26th.

Later in the same proceeding, the Defendant's appointed counsel moved to withdraw from representation, stating that the Defendant's attempt to hire new counsel indicated a lack of confidence in him, but he maintained that he would be ready to take the case to trial as scheduled. The Defendant also addressed the trial court directly and requested that it reconsider its ruling regarding the continuance. In response, the trial court stated that it could not effectively manage its docket if it "allow[ed] every single person that c[ame] before [it] to wait until the last minute to hire a lawyer and that [serve as] a basis to put off their trial[.]" The trial court reconfirmed the Defendant's trial date and his continued representation by trial counsel.

The Defendant's trial took place from April 26 to April 28, 2021. The proof introduced at trial showed that the victim was on foot in a South Knoxville residential area when he encountered several individuals in the street, who were all larger in stature than

him. These individuals were also known associates of the Defendant. Several nearby residents observed the victim backing away from these individuals before a physical altercation erupted. Two witnesses testified that the Defendant spoke by phone with someone involved in the fight and that they and the Defendant then proceeded in a maroon Jeep Grand Cherokee to the scene of the ongoing confrontation. The driver of the Jeep testified that the Defendant yelled, "Just fight, my brother," to one of the victim's assailants as he exited the vehicle. Multiple eyewitnesses at the scene reported that a male exited the Jeep and pursued the victim, both men ran out of their field of vision into a wooded area, and they heard gunshots within a few seconds. Multiple eyewitnesses shortly thereafter saw a male enter the Jeep with a gun in his hand, after which they saw the Jeep speed away from the scene. The other occupants of the Jeep testified that the Defendant returned to the Jeep with a gun, got back into the vehicle, and directed them to leave the scene. Multiple eyewitnesses called 911 and entered the wooded area, where the victim was found deceased from a single gunshot wound to the back of the head.

The Defendant's recorded interview with law enforcement was played for the jury, during which he stated that the victim had dropped a gun, the Defendant reached it first, and he fired one shot without looking before running away. The Defendant denied intending to shoot the victim or knowing that the victim had been shot when he left the scene. The defense theory pursued at trial was that another individual, Robert Reed, had also been at the scene and had actually shot and killed the victim. After deliberations, the jury found the Defendant guilty of the lesser included offense of second degree murder.

At a sentencing hearing held on June 24, 2021, the parties agreed that the Defendant was a Range I, standard offender. During a lengthy allocution, the Defendant denied responsibility for the killing, stating that the events at the scene of the murder "didn't happen that way" and that he "did not come [to the scene] with a firearm." After hearing argument from the parties, the trial court applied three enhancement factors that "greatly outweighed" any mitigation—that the Defendant had a prior criminal history, was a leader in the offense, and possessed or employed a firearm during the commission of the offense. *See* Tenn. Code Ann. § 40-35-114(1), (2), (9). In rendering its ruling, the trial court stated that the Defendant's past criminal activity was "not a significant history," and it did not place "much" weight on the leadership factor, but it placed "significant" weight on the firearm employment. In response to the Defendant's assertion in his allocution that he did not bring a firearm with him to the scene, the trial court stated that "common sense" led it to believe otherwise: the victim was being pursued and assaulted by multiple individuals larger than him, but by the Defendant's account, the victim inexplicably did not display the firearm he supposedly possessed until after the Defendant had chased him into the woods. At the conclusion of the hearing, the trial court ordered the Defendant to serve the maximum sentence of twenty-five years in the Tennessee Department of Correction.

The trial court held a hearing on the Defendant's motion for new trial on June 8, 2023, as argued by successor counsel.[1] The Defendant presented testimony from an attorney with Logan-Thompson regarding the amount of work that had been done on the Defendant's case prior to the firm requesting a continuance from the trial court, and he confirmed, without offering any specifics, that their trial plan and strategy differed "pretty substantially" from their understanding of trial counsel's approach to the case. During this testimony, the trial court clarified with the witness that the firm's representation of the Defendant was contingent on obtaining a continuance. The witness further confirmed that the firm could have been ready for the scheduled trial date if the Defendant had arranged to hire them two months earlier than when he initially approached them about the representation.

During the argument phase of the hearing, the Defendant voiced dissatisfaction with the Administrative Office of the Courts' ("AOC") denying his request for funds to hire an investigator during the motion for new trial proceedings, predicating his argument on the AOC's grant of funds to a similarly situated defendant in the same procedural posture. The Defendant claimed that there "were some very specific witnesses [the Defendant] wanted to talk to, to see if [those witnesses] would be helpful to some of the claims [the Defendant] wanted to raise at motion for new trial." In so arguing, the Defendant acknowledged that the trial court had granted the Defendant's request, thereby allowing the request to proceed to the AOC for approval. The Defendant also acknowledged the trial court's lack of authority to rule on this portion of his motion for new trial, and he stated the issue was being raised for preservation purposes only. After noting its lack of jurisdiction to rule on the AOC issue, the trial court denied the Defendant's motion for new trial, and this timely appeal followed.

## II.  ANALYSIS

The Defendant contends on appeal that he is entitled to a new trial based on the trial court's (1) denial of his right to counsel of his choosing by refusing to continue his trial date; (2) error under the law of the case by allowing testimony about Mr. Reed and by allowing improper opinion, character, and hearsay testimony; and (3) abuse of discretion in sentencing by imposing the maximum penalty. He further contends that he should be granted a new trial (4) due to the AOC's denial of funding at the motion for new trial stage of the proceedings and (5) due to cumulative error.

---

[1] The Defendant's trial counsel failed to file a motion for new trial in this case and was subsequently relieved as counsel of record. This appeal is the result of successor counsel obtaining partial post-conviction relief from the trial court in the form of a granted delayed appeal and motion for new trial, which was thereafter timely filed. *See* Tenn. Code Ann. § 40-30-113(a)(1), (3).

A.     Right to Counsel and Motion to Continue Trial

The Defendant, relying on the United States and Tennessee Constitutions, argues that the "trial court committed structural error when it erroneously denied [him] the right to counsel of choice by failing to allow a substitution of retained counsel of his choice by making substitution contingent on preserving the trial date." The State responds that the trial court properly exercised its discretion based on the circumstances present in this case. We agree with the State.

The Sixth Amendment of the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant a right to counsel. *See Gideon v. Wainwright*, 372 U.S. 335, 339 (1963); *State v. Holmes*, 302 S.W.3d 831, 838 (Tenn. 2010). The right to counsel is a constitutional safeguard "deemed necessary to insure fundamental human rights of life and liberty." *Holmes*, 302 S.W.3d at 838 (quoting *Johnson v. Zerbst*, 304 U.S. 45, 462 (1938)). The United States Supreme Court has previously held that this constitutional guarantee includes "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)); *see also Powell v. Alabama*, 287 U.S. 45, 53 (1932) ("[A] defendant should be afforded a fair opportunity to secure counsel of his own choice."). However, the Court also explicitly recognized the trial court's authority "to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Id.* at 152.

The Defendant's claim that he was denied counsel of his choice at trial is based on the trial court's refusal to continue the trial date to accommodate the request of newly-retained counsel. A trial court's denial of a continuance will be reversed only if it appears that the trial court abused its discretion to the prejudice of the defendant. *State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004). "An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted." *State v. Schmeiderer*, 319 S.W.3d 607, 617 (Tenn. 2010) (quoting *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995)). "The only test is whether the defendant has been deprived of his rights and an injustice done." *Id.* The defendant bears the burden on appeal of demonstrating that harm ensued from the denial of the requested continuance. *State v. Willis*, 496 S.W.3d 653, 745 (Tenn. 2016) (citing *State v. Vaughn*, 279 S.W.3d 584, 598 (Tenn. Crim. App. 2008)). "Moreover, a defendant who asserts that the denial of a continuance constitutes a denial of due process or the right to counsel must establish actual prejudice." *Odom*, 137 S.W.3d at 589 (citing *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)). The Sixth Circuit Court of Appeals has held that "[t]he defendant demonstrates 'actual

prejudice' by showing that a continuance would have made relevant witnesses available or added something to the defense." *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997); *see also State v. Daniels*, 656 S.W.3d 378, 386 (Tenn. Crim. App. 2022).

The Defendant makes no such showing here. Although the Defendant argues that retained counsel's strategy "differed substantially" from the strategy that was allegedly intended to be used by trial counsel, he provides no other basis to establish "actual prejudice" by showing what would have been added to the defense. Instead, the Defendant attacks the trial court's reasoning in denying the continuance based on its concern for its trial calendar. As noted above, the trial court retains the authority to "balanc[e] the right to counsel of choice . . . against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citations omitted). This is true even when such scheduling decisions "effectively exclude a defendant's first choice of counsel." *Id.* We reiterate, absent a clear showing of an abuse of discretion, the trial court's denial of a continuance under such circumstances will not be overturned on appeal. *See State v. Russell*, 10 S.W.3d 270, 275 (Tenn. Crim. App. 1999) (citations omitted); *see also State v. Watt*, No. M2012-01487-CCA-R3-CD, 2014 WL 97291, at *16-17 (Tenn. Crim. App. Jan. 10, 2014) (concluding that the trial court did not abuse its discretion in denying a continuance and a request to substitute retained counsel seventeen days prior to the scheduled trial date when appointed counsel was ready to proceed to trial but newly retained counsel was not).

Here, the record is clear that the substitution of counsel was contingent on the trial court's granting a continuance of the trial date in this case, and the request was made a mere eleven days before the scheduled trial date. Prior to this request for a continuance, the record is replete with the trial court's unambiguous assertions that it intended to prioritize trying the Defendant's case as scheduled, and it expected the parties to the case to likewise be ready to do so. Contrary to the Defendant's assertion that the trial court decided "not to allow" the Defendant to hire counsel, it specifically stated in its ruling that it was not precluding newly-retained counsel from substituting in this case if some other circumstances *required* the trial not to go forward as scheduled on April 26, 2021. Rather, the trial court clearly articulated that its concern in denying the continuance was based largely on the pandemic's extreme reduction in the amount of jury trials, the resulting backlog of cases on its trial calendar, the age of this particular case, and the logistics and planning involved in its collaboration with other judges to conduct jury trials in accordance with the Tennessee Supreme Court's order regarding social distancing—which necessitated arrangements to be made in advance by the trial court to use another judge's courtroom that was large enough to accommodate social distancing during this trial. We cannot conclude that these considerations were improper or amounted to an abuse of the trial court's discretion to deny the Defendant the requested continuance. The Defendant is not entitled to relief.

B.      Admissibility of Evidence

The Defendant next challenges the admissibility of portions of the testimonies of numerous witnesses.   The State responds that the Defendant's evidentiary challenges are either without merit or waived absent relief via plain error review.

In conducting plain error review, our court will reverse for plain error only if the five following prerequisites are satisfied:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  All five factors must be present in the record before an appellate court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established.  *Id*. at 283.  In order to warrant plain error relief, the magnitude of the error must have been so significant "that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)).  Plain error relief should be "sparingly exercised[,]" *see State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007), and is only appropriate for errors that are "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding," *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006).  A defendant has the burden of persuading the appellate court that plain error exists.  *Bledsoe*, 226 S.W.3d at 355.

We address each of the Defendant's theories on appeal separately below.

1.      Testimony Regarding Mr. Reed's Death

To put this claim in context, we briefly outline here the trial history related to Mr. Reed's death.  Upon cross-examination of the Defendant at his first trial, the following exchange occurred between the prosecutor and the Defendant:

THE STATE: Nobody called you[?]  Maniac didn't call you, Baltimore didn't call you, Big Al didn't call you, Big 6, do you know Willie Winston?

THE DEFENDANT: Not personally, no, but I know he's been around.

THE STATE: I mean you know Willie Winston, don't you?

THE DEFENDANT: I know he's been around, yes.

THE STATE: You rapped - you rapped with him. Baltimore knew him, he told the police he was part of your BCF. Your record label.

THE DEFENDANT: He may have been with Baltimore but he's not with me personally every day, no. I know of him, yes, I do.

THE STATE: You mentioned him to Julio Allen when you were in jail, didn't you?

THE DEFENDANT: I never told Julio Allen anything.

THE STATE: *You never told Julio Allen that you and Big 6 had J.R. killed?*

THE DEFENDANT: No, I did not.

*See Frazier*, 2019 WL 2750138, at *21-22 (emphasis added). The record reflected that J.R. referred to Mr. Reed. *Id.* at *22. On appeal, this court held that the prosecutor's question regarding the Defendant's possible involvement in Mr. Reed's death was not relevant to showing whether the Defendant acted with premeditation in the victim's death. *Id.* at *21-23. The court determined that plain error existed due to the admission of this evidence that Mr. Reed was shot in the head similarly to the victim, when considered in conjunction with the improperly admitted evidence of the Defendant's gun possession and the lack of overwhelming evidence of premeditation. *Id.* On this basis, the court reversed the conviction and ordered a retrial. *Id*.

Following reversal, in his opening statement for the Defendant at the subsequent trial, trial counsel contended that Mr. Reed had been at the scene of the murder and had shot and killed the victim, before Mr. Reed was killed in a later homicide. The State's questions about Mr. Reed at the retrial related to whether law enforcement's investigation indicated that Mr. Reed was present at the scene of the victim's murder. During the State's direct examination of the lead investigator, it was established that Mr. Reed was deceased, his being the victim of an "apparent gunshot wound to the head on July the 6th or 7th of 2012, shortly after [the victim's] murder." Likewise, in his cross-examination of multiple State's witnesses, trial counsel attempted to elicit testimony that Mr. Reed was present at

the scene of the murder. However, no fact witness testified to having seen Mr. Reed there. Indeed, the only connection drawn between Mr. Reed and his possible presence on the scene of the victim's murder came through trial testimony from the investigating officer regarding a non-testifying third party's statement that the third party had seen Mr. Reed at the scene prior to the shooting. Trial counsel again insisted in his closing argument that Mr. Reed had been present and had shot and killed the victim. The prosecutor commented during closing that it was "awful[ly] convenient to blame a case on somebody who's been murdered himself" and "can't be here to defend against the assertion that he is responsible for a homicide."

The Defendant contends that testimony elicited by the State about the death of Mr. Reed through the lead investigator runs afoul of this court's ruling in his previous appeal, violating the law of the case doctrine. The State responds that the testimony complied with this court's prior ruling and asserts that the Defendant's failure to object at trial or request plain error review on appeal results in waiver of the issue.

"The extent to which the law of the case doctrine precludes re-litigation of an issue decided in a prior appeal is a question of law, subject to de novo review." *Khan v. Regions Bank*, 584 S.W.3d 418, 425 (Tenn. Ct. App. 2019). Pursuant to the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. *State v. Jefferson*, 31 S.W.3d 558, 560-61 (Tenn. 2000) (quoting *Memphis Publ'g. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998)). Furthermore, "[t]he doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication." *Id.* "There are limited circumstances which may justify reconsideration of an issue which was [an] issue decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal." *Id.* (quoting *Memphis Publ'g. Co.*, 975 S.W.2d at 306).

Contrary to the Defendant's argument, the law of the case doctrine does not entitle him to relief in this instance. In the Defendant's previous appeal, this court concluded that a specific question by the prosecutor to the Defendant, after the Defendant had testified that Mr. Reed killed the victim, was not relevant: "You never told Julio Allen that you and Big 6 had [Mr. Reed] killed?" *Frazier*, 2019 WL 2750138, at *14, *22. This court determined that "[t]he prosecutor's question was an explicit attempt to show that the Defendant was involved in Mr. Reed's death, which occurred mere days following the

victim's fatal shooting." *Id.* at \*22.  In finding error under Tennessee Rules of Evidence 401, 402, and 403, this court reasoned that "[w]hether the Defendant played a role in Mr. Reed's killing was not relevant to showing whether the Defendant acted with premeditation in the victim's death." *Id.*  The questions posed during the Defendant's second trial did not in any way imply that the Defendant *was involved* in Mr. Reed's death.  Importantly, in its previous opinion, this court did not designate "evidence that Mr. Reed was shot in the head similarly to the victim" as having been improperly admitted in the Defendant's first trial, nor did it find any error in the numerous mentions of Mr. Reed through other witnesses' testimony, including the lead investigator's.  *Id.* at \*4-17, \*21-23.  For these reasons, we are not convinced that the testimony relating to Mr. Reed was improperly admitted in violation of this court's prior decision.  Accordingly, we need not address whether a contemporaneous objection was required, and the Defendant is not entitled to relief.

### 2.     Other Challenges to Certain Testimony

The Defendant contends that the trial court committed plain error by allowing (1) improper lay witness opinion testimony by the lead investigator about the results of his investigation and the typical behavior of shell casings; (2) irrelevant and prejudicial testimony about the Defendant's rap group and his alleged involvement in selling marijuana; and (3) hearsay testimony by the State's investigator regarding what a non-testifying third-party told him about Mr. Reed's being present at the scene of the murder.  The State responds that the Defendant's plain error evidentiary challenges are waived due to inadequate briefing.  We conclude that the Defendant has failed to carry his burden of demonstrating that plain error exists.

As noted above, the defendant has the burden of persuading the appellate court that plain error exists.  *Bledsoe*, 226 S.W.3d at 355.  Despite this burden, the Defendant's appellate brief does not articulate the appropriate standard of review, identify or argue any of the five factors necessary to establish plain error, or include citations to authority for each issue.  *See* Tenn. R. App. P. 27(a)(7)(A) (requiring the appellant's brief to contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied upon); *see also* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").  Additionally, and perhaps with the greatest impact, the Defendant makes no argument to support the necessary, yet unasserted, contention that these issues were not waived for tactical reasons—a required component of establishing plain error.  *See Smith*, 24 S.W.3d at 282.  We need not speculate what tactical reasoning was behind trial counsel's

decision to forgo making these objections, but the record in this case does provide examples of trial counsel's attacking the veracity of the investigation and credibility of the State's witnesses, as well as using the now complained of hearsay testimony regarding Mr. Reed to establish the defense's theory of the case. The Defendant's failure on appeal to make a showing that these were *not* tactical decisions precludes us from finding the existence of plain error. *See id*. at 283. "Where a defendant fails to carry his burden of establishing even one of the five plain error prerequisites, the reviewing court may discontinue its analysis and reject the defendant's claim of plain error." *Bledsoe*, 226 S.W.3d at 358. We do so here. The Defendant is not entitled to relief.

## C. Sentencing

The Defendant claims that the maximum, in-range sentence he received is excessive and that the trial court abused its discretion by failing to properly consider applicable enhancement and mitigation factors. Specifically, the Defendant argues that (1) the trial court improperly applied the leadership enhancement factor, contending that there was no proof of the Defendant's occupying a leadership role in relation to the victim's other assailants; and (2) the trial court erred in placing "significant weight" on its belief that the Defendant brought the firearm that he employed in the victim's murder. The State responds that the trial court properly exercised its discretion by imposing a within-range sentence consistent with the statutory purposes and principles of sentencing. We agree with the State.

When an accused challenges the length of a sentence or manner of service, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to "questions related to probation or any other alternative sentence"). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," a punishment sufficient "to prevent crime and promote respect for the law," and consideration of a defendant's

"potential or lack of potential for . . . rehabilitation[.]" Tenn. Code Ann. § 40-35-102(1), (3), (5); *see Carter*, 254 S.W.3d at 344. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The Sentencing Reform Act was enacted in order "to promote justice" and "assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions." Tenn. Code Ann. § 40-35-102. In determining the proper sentence, the trial court must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. Tenn. Code Ann. § 40-35-210(b).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); *Carter*, 254 S.W.3d at 342-43. Moreover, misapplication of an enhancement or mitigating factor no longer "invalidate[s] the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

Here, the Defendant was convicted of second degree murder, a Class A felony. *See* Tenn. Code Ann. § 39-13-210(c)(1). As a Range I offender, the appropriate sentencing range was fifteen to twenty-five years. *Id.* § 40-35-112(a)(1). Within this range, the trial court imposed the maximum twenty-five-year sentence. The trial court expressly stated its consideration of mitigating evidence was "greatly outweighed" by the enhancement factors it found in this case: that the Defendant had a history of criminal convictions or criminal behavior, occupied a leadership role in the commission of the offense, and employed a firearm. *See* Tenn. Code Ann. § 40-35-114(1), (2), (9).

First, the Defendant does not contest the trial court's application of enhancement factor (1). The Defendant's prior criminal history consists of two convictions for casual

exchange and a conviction for possession of a weapon with the intent to go armed, as well as numerous disciplinary infractions while incarcerated, spanning from 2012 through 2020. Moreover, we are not persuaded by the Defendant's argument that the trial court misapplied enhancement factors (2) and (9), which is the basis of his claim that the trial court abused its discretion. Relative to the leadership enhancement factor, the Defendant arrived on the scene after receiving a phone call from one his associates present at the ongoing confrontation, and the Defendant gave an instruction to one of the victim's assailants to continue beating the victim upon his arrival, but the Defendant alone pursued the victim into the wooded area where the victim was shot in the head from behind. Relative to the firearm enhancement factor, the Defendant, by his own admission, fired a gun, which he took with him when he left the scene. The Defendant's employment of a firearm is present notwithstanding the trial court's response to the Defendant's allocution. Accordingly, the trial court's findings are supported by the record in this case.

The trial court considered the parties' arguments and articulated a reasoned basis for imposing the sentence in this case affording its determination the presumption of reasonableness. *See Bise*, 380 S.W.3d at 705-06. No abuse of discretion has been shown, and the Defendant is not entitled to relief.

### D. Request for Investigator Funding

The Defendant asserts that the AOC erred in denying funding he requested at the motion for new trial stage and claims that Tennessee Supreme Court Rule 13 is unconstitutional. However, the Defendant acknowledges that the funds at issue were authorized by the trial court. Our inquiry into this issue ends there. We have no jurisdiction to review decisions made by the AOC or to entertain a constitutional challenge to a supreme court rule. *See Dotson v. State*, 673 S.W.3d 204, 218 (Tenn. 2023) (concluding that a Rule 13 funding decision is not subject to review and that the Court of Criminal Appeals lacked authority to consider constitutional challenges to a supreme court rule). The trial court granted the Defendant's request for funding, leaving no decision by the inferior tribunal for the Defendant to appeal to this court. *See id.* No relief is available from this court.

### E. Cumulative Error

The Defendant lastly claims that cumulative error entitles him to a new trial. However, the Defendant failed to raise this issue in his motion for new trial or its subsequent amendments. The failure to raise cumulative error in the motion for new trial waives the issue on appeal. *See State v. Davis*, 141 S.W.3d 600, 632 (Tenn. 2004). Additionally, as the Defendant has not established the presence of any errors in the singular sense, he is not entitled to relief on the basis of any purported cumulative effect. *State v.*

*Hester*, 324 S.W.3d 1, 77 (Tenn. 2010) (noting that more than one actual error in the trial court proceedings must exist before the cumulative error doctrine can apply). The Defendant is not entitled to relief.

## III.   CONCLUSION

Based upon the foregoing and consideration of the record as a whole, we affirm the judgment of the trial court.

s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE